Michael G. **LEVINE, Petitioner–Appellee,**

v.

Patricia **TORVIK, Respondent–Appellant,**

Stephanie Tubbs Jones, **Intervenor–Appellant.**

Nos. 92–3625, 92–3712.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1992.

Decided March 1, 1993.

Rehearing Denied April 14, 1993.

Franklin J. Hickman (argued and briefed), Stege, Hickman & Lowder, Cleveland, OH, Dalma C. Grandjean, Grandjean & Goraleski, Dayton, OH, for petitioner-appellee.

Frank C. Gasper (argued), Stephanie J. Jones, Laurence R. Snyder, Louis C. Frey, Office of Pros. Atty., Cleveland, OH, for intervenor-appellant.

John J. Gideon (argued and briefed), Timothy J. Mangan (briefed), Office of the Atty. Gen. of Ohio, Columbus, OH, for respondent-appellant.

Stanley M. Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for amicus curiae Georgene Kravitz.

Michael Kirkman (briefed), Harry B. Keith (briefed), Ohio Legal Rights Service, Columbus, OH, Kevin F. O'Neill, American Civil Liberties Union of Ohio Foundation, Cleveland, OH, for amici curiae Ohio Legal Rights Service and American Civil Liberties Union of Ohio Foundation, Inc.

Before: GUY and RYAN, Circuit Judges; and CHURCHILL, Senior District Judge.*

RYAN, Circuit Judge.

Respondent Patricia Torvik, Superintendent of the Dayton, Ohio, Forensic Center, and intervenor Stephanie Tubbs Jones, the Cuyahoga County, Ohio, Prosecuting Attorney, appeal from the district court's decision to issue a conditional writ of habeas corpus directing that Michael G. Levine be released from the custody of the forensic center. They also appeal from the district court's order staying future state court proceedings in connection with Levine. The two appeals, which have been consolidated, present a number of issues. For the reasons discussed below, however, we conclude that both the conditional writ of habeas corpus and the stay were properly entered, and we shall, therefore, affirm.[1]

## I.

On September 26, 1979, Michael Levine was found not guilty by reason of insanity, following an Ohio state court prosecution, on charges of aggravated burglary, extortion, kidnapping, attempted murder, and aggravated murder. He was committed to the custody of the Ohio Department of Mental Health.

Levine has a history of mental illness dating back to 1966. At that time, he was arrested for forging checks and briefly admitted to a psychiatric hospital, where he was diagnosed as "schizophrenic reaction, schizo-affective type, associated with depression, severe, improved." He began seeing a psychiatrist, Dr. Levendula, in 1973, and at one point was rehospitalized. He was diagnosed then as "manic depressive psychosis, explosive personality." During his psychotherapy with Dr. Levendula, Levine threatened to kill the doctor and his family, and told the doctor that he desired to kill an unnamed 25–year–old woman. Nonetheless, in 1979, about a

---

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. We shall, for the sake of convenience, refer to the Respondent and the Intervenor, collectively, as "Ohio" or "the state."

week prior to the crimes for which Levine is now committed, Dr. Levendula was becoming convinced that he had achieved a "therapeutic triumph" because Levine's condition seemed so much improved. Levine was behaving very calmly in therapy, and had agreed to grant his then-wife a separation.

Unfortunately, Dr. Levendula's "therapeutic triumph" was illusory. Levine and an accomplice kidnapped Julius and Georgene Kravitz, a prominent Cleveland couple, with the intention of extorting money for a business venture. During the course of the crime, Levine shot both of the Kravitzes; Julius Kravitz died, while Georgene Kravitz managed to escape.

A bench trial was held before the Cuyahoga County Court of Common Pleas, where Levine was found not guilty by reason of insanity. The expert witness testimony at trial focused on Levine's lack of remorse for his crimes, and emphasized that Levine would function much better in an institutionalized, structured surrounding than in the unstructured "real world." After trial, Levine was hospitalized. During this period, he wrote a series of letters to his now ex-wife containing vicious threats of harm, including thinly disguised threats to kill her. The last of these letters was written in February 1980. During his commitment, Levine received medication only briefly; he has been without medication for almost twelve years. He has also been largely without psychotherapy during this time.

■ Ohio statutes provide that a person found not guilty by reason of insanity is entitled to periodic hearings:

> The court shall hold a full hearing on applications for continued commitment at the expiration of the first ninety-day period and at least every two years after the expiration of the first ninety-day period.... If the court, after a hearing for continued commitment finds *clear and convincing evidence that the respondent is a mentally ill person* subject to hospitalization by court order, the court may order continued commitment....

Ohio Rev.Code Ann. § 5122.15(H) (emphasis added). Ohio statutes define "mental illness" and "mentally ill person subject to hospitalization" as follows:

> "Mental illness" means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life.

Ohio Rev.Code Ann. § 5122.01(A).

> "Mentally ill person subject to hospitalization by court order" means a mentally ill person who, because of his illness ... [r]epresents a substantial risk of physical harm to others as manifested by evidence of *recent homicidal or other violent behavior,* evidence of *recent threats* that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of *present dangerousness....*

Ohio Rev.Code Ann. § 5122.01(B) (emphasis added). In other words, a person must be *both* mentally ill *and* presently dangerous in order to be hospitalized.

Levine underwent commitment hearings to assess his condition in November 1979; April 1980; November 1980; and January and February 1982. Each time, his request for release was denied, but Levine did not appeal. In September 1983, the Dayton Mental Health Center (DMHC) notified the state trial court that Levine no longer required hospitalization. A hearing was held in December 1983. The presiding judge concluded that Levine was still mentally ill, although in remission, and subject to hospitalization under Ohio law. Levine appealed the trial court's decision. The Ohio Court of Appeals affirmed in October 1984. Levine then appealed to the Ohio Supreme Court, which, in December 1984, dismissed the appeal for lack of a substantial constitutional question.

Levine filed a petition for writ of habeas corpus in federal court in June 1985. While the petition was pending, Levine waived the periodic state hearings to which he was entitled. A magistrate judge concluded in 1988 that there had been sufficient evidence presented for the state trial

court to conclude that Levine was a mentally ill person subject to hospitalization by court order, but that there had not been enough evidence to order him confined to a maximum security facility. The magistrate judge's decision was appealed to this court and we vacated his decision on the grounds that the magistrate judge had been without jurisdiction because consent was improperly urged upon the parties under 28 U.S.C. § 636(c). On remand in July 1988, the magistrate judge recommended that the district court adopt the magistrate's earlier decision as the district court's findings of fact and conclusions of law.

A week after that recommendation, Levine's counsel informed the district court that the state trial court had conducted a new commitment hearing at the beginning of July 1988, and had again recommitted Levine to the forensic center. The magistrate judge therefore withdrew his earlier recommendation, and eventually concluded that the constitutional issues presented by the 1983 commitment had been mooted by the 1988 recommitment.

Levine began again with the process of exhausting his state court remedies, now as to the 1988 recommitment. The trial court's decision was affirmed in the state court of appeals, and the Ohio Supreme Court again denied Levine's motion to appeal. In June 1990, following Levine's new petition in the district court for a writ of habeas corpus, the magistrate judge recommended that the district court issue a writ ordering a conditional discharge, this time finding that there was insufficient evidence in 1988 to conclude that Levine was mentally ill. He reasoned as follows:

> [In 1988,] all of the mental health professionals, including the treating professionals, concluded Mr. Levine was not presently mentally ill. For this Court to conclude, in the face of that testimony, that there is evidence from which a reasonable trier of fact could conclude to a clear and convincing degree that Mr. Levine is mentally ill and subject to hospitalization by court order would be to deny any impact to the Due Process Clause in this case.

The district court "concur[red] with the Magistrate Judge's conclusion that Levine is being confined in violation of the Constitution of the United States, and that he should be granted an immediate release subject to [certain] conditions...."[2] In an order dated June 25, 1992, the district court issued its final decision: that Levine be released within 96 hours. Upon motion by the state of Ohio, this court granted a stay of the writ.

The district court then learned that the state trial court had again directed, without giving notice to Levine or his attorney, that a new confinement hearing be held. In order that the issues surrounding the 1988 confinement hearing not be mooted (as had happened with the 1983 issues), the district court stayed the state court proceedings, pending resolution of this appeal.

The issues raised in this appeal can be divided into two categories. The first assignments of error we discuss challenge the district court's grant of habeas relief based on Levine's due process claim, while the remainder are concerned with the district court's stay of the state court proceedings.

## II.

### A.

The state contends that the district court erred in concluding that there

---

2. The conditions, recommended by Dr. Rizk, a consulting psychiatrist for the Cuyahoga County Court of Common Pleas, as stated by the district court, are:

1. The defendant should reside in a different county, away from the victim's family;
2. Follow-up once every two weeks at a community mental health center or by a private psychiatrist or psychologist;
3. The court must be notified within 24 hours in case of the defendant's failure to attend his appointments without an excuse;

4. The community mental health center, private psychiatrist or psychologist should be required to write to the court progress reports about the defendant's condition once every six months;
5. In case of any signs of deterioration in the mental condition of the defendant, immediate rehospitalization should be pursued and the court informed within 24 hours.

was insufficient evidence adduced at the 1988 hearing to support Levine's continued commitment.[3] This court applies a *de novo* standard of review to the district court's decision in a habeas corpus case. *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir.1990) (per curiam). We review the factual findings of the district court under a clearly erroneous standard, *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 497–501, 104 S.Ct. 1949, 1957–60, 80 L.Ed.2d 502 (1984), and give complete deference to state court findings unless they are clearly erroneous. *Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982) (per curiam).

Levine's constitutional claim is that although there was no defect in Ohio's procedures for determining whether he should be released, the trial court failed to properly apply those procedures. As a result, Levine argues, he was recommitted despite a complete absence of evidence justifying recommittal, and he was therefore denied due process of law as guaranteed by the Fourteenth Amendment. This type of due process claim was considered by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

> [A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend.... [T]he most elemental of due process rights [is] freedom from a wholly arbitrary deprivation of liberty.

*Id.* at 314, 99 S.Ct. at 2786 (citation omitted). *Jackson* stated the constitutional standard for reviewing the sufficiency of the evidence: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements"[4] of the relevant determination to be made. *Id.* at 319, 99 S.Ct. at 2789.

■ *Foucha v. Louisiana,* —— U.S. ——, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992), is the most recent Supreme Court statement concerning the kind of determination to be made here. There, the Court held that an insanity acquittee "may be held as long as he is both mentally ill and dangerous, but no longer." *Id.* at ——, 112 S.Ct. at 1784. The potential for future danger cannot justify indefinite commitment in the case of an insanity acquittee who is no longer mentally ill, any more than the possibility that a convicted criminal will commit future crimes can alone justify his confinement. *Id.* at ——, n. 4, 112 S.Ct. at 1784 n. 4. Ohio law, by defining a mentally ill person subject to hospitalization as one who is mentally ill *and* who presents a danger to himself or others, is in accord with this constitutional standard.

*In re Burton,* 11 Ohio St.3d 147, 11 OBR 465, 464 N.E.2d 530 (1984), is the leading Ohio case interpreting the state's law on the subject. The defendant there was a mental patient whose mental illness was in a state of remission as a result of psychotropic medicine. The court interpreted Ohio statutes regarding court-ordered hospitalization to mean that

> a person subject to hospitalization must represent a substantial risk of physical harm to himself or other members of society at the time of the commitment hearing. *The individual's present mental state must be evaluated upon cur-*

---

**3.** We reject the state's argument that since the district court's release order was only conditional, the district judge must have considered Levine to be mentally ill, because under Ohio law, a conditional release order requires a finding of mental illness. (Otherwise, the committed individual is released unconditionally.) However, the fact that the district court included conditions for Levine's release in its grant of habeas relief does not mean that it was acting pursuant to Ohio law, and finding Levine to be mentally ill. Instead, the district court was imposing conditions pursuant to its broad discretion to fashion a habeas writ. *Hilton v. Braunskill,* 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

Furthermore, the district court explicitly found that Levine was not mentally ill. The government's argument is therefore without merit.

**4.** As discussed below, there is a controversy over the appropriate burden of proof to be applied here. *Jackson,* which considered a criminal conviction, applied a "beyond a reasonable doubt" standard, which neither party suggests should be used. Otherwise, though, the reasoning of *Jackson* applies here, although the adjudication at issue here is not a criminal prosecution.

*rent or recent behavior as well as prior dangerous propensities* of the person. The General Assembly has ... provided the trial court with broad discretion to review the individual's past history in order to make a well-informed determination of his present mental condition.

*Id.* at 149, 11 OBR 465, 464 N.E.2d 530 (emphasis added). A court should apply a "totality of the circumstances" test in making this determination, considering:

(1) whether, in the court's view, the individual currently represents a substantial risk of physical harm to himself or other members of society; (2) psychiatric and medical testimony as to the present mental and physical condition of the alleged incompetent; (3) whether the person has insight into his condition so that he will continue treatment as prescribed or seek professional assistance if needed; (4) the grounds upon which the state relies for the proposed commitment; (5) any past history which is relevant to establish the individual's degree of conformity to the laws, rules, regulations and values of society; and (6) if there is evidence that the person's mental illness is in a state of remission, the court must also consider the medically suggested cause and degree of the remission and the probability that the individual will continue treatment to maintain the remissive state of his illness should he be released from commitment. The trial court is not limited to considering any of the above factors. The court may, in its discretion, consider other relevant evidence....

*Id.* at 149–50, 11 OBR 465, 464 N.E.2d 530.

The state contends that Dr. Rizk testified that Levine is mentally ill. We disagree with this narrow interpretation of his testimony. He in fact testified that Levine showed no signs or symptoms of mental illness:

[Counsel for the state]: Now, in your field, when you put a label of, and maybe for want of a better word, label of remission on an individual, that still notes that they still have that condition; correct, whether it is active or inactive or in remission?

[Dr. Rizk]: In remission means, to me, that somebody suffered from an active illness at one point in time, and at the present time, *he is not showing the signs and symptoms of that specific illness, or showing very little of it.*

[Counsel for the state]: Doctor, after you examined Mr. Levine, did you have an opinion as to his current mental status?

[Dr. Rizk]: Yes, I did.... What I wrote in my report actually is that, major affective disorder, bipolar, depressed, *in full remission.*

(Emphasis added.) Furthermore, *all* eleven expert witnesses testified that Levine was not currently displaying any signs or symptoms of active mental illness and that he had shown no such signs since at least 1982. We note that, according to Dr. Rizk, this diagnosis of a mood disorder in full remission will remain with Levine for life; in other words, no matter how well he behaves in the future, no behavior can ever produce a more favorable diagnosis.

The state also contends that the testimony of Drs. Rizk, Pasha, and Bertschinger supports the conclusion that Levine was dangerous. Again, we disagree. All of these expert witnesses were of the opinion that Levine should not be hospitalized, but they were reluctant to predict his future dangerousness because, in their view, such predictions are unreliable. However, none of them were of the opinion, implicitly or explicitly, that Levine was dangerous in 1988. Further, there is nothing in the hearing record to indicate that Levine has made any recent threats or engaged in any recent violent behavior; in fact, the uncontradicted testimony was that Levine has shown no signs of dangerousness since 1982.

In finding, in 1988, that Levine was mentally ill and dangerous, the state court first focused on testimony the court had received at Levine's criminal trial in 1979: "[t]he evidence was abundantly clear that [Levine] suffered chronic illness [schizophrenia] for which there was no cure." Stating that "past history is crucial," the judge went on to reject the testimony of each of the expert witnesses, concluding as follows:

Given the fact that psychosis is an illness for which there is no known cure, I find that the perhaps well meaning doctoral diagnosis of remission and recommendation of conditional release to be in error. Or, stated in a more legal sense, the testimony not to be credible.

It is true that, under Ohio standards as set out in *In re Burton*, it is perfectly permissible for the trial court to consider evidence of past behavior in assessing an insanity acquittee's present mental status. However, as this principle was applied by the state of Ohio, it amounts to an irrebuttable presumption that Levine can *never* be released. In applying Ohio's definition of "mental illness" to any particular case, medical testimony is obviously of singular importance, because it is ordinarily through the testimony of medical professionals that a court can best understand whether an individual has the "substantial disorder of thought" that is required for a finding of "mental illness" under Ohio Rev.Code Ann. § 5122.01(A). This is not to say that nonmedical testimony is worthless; but for the trial court to disregard *all* the 1988 medical testimony as unworthy of credence in favor of the lay testimony concerning Levine's past heinous acts, and thereby to conclude he is still mentally ill, does not meet Ohio's statutory standards as explained by Ohio's courts. If it were sufficient for the state merely to demonstrate that Levine was mentally ill at the time he was found not guilty by reason of insanity, it would be pointless for the state to mandate hearings at two-year intervals to determine whether a committed individual should be released.

We conclude that no evidence was adduced in the 1988 hearings that would allow a rational trier of fact to find the elements of mental illness and dangerousness as defined in Ohio statutes and case law. We see no alternative but to conclude that there was constitutionally insufficient evidence to support the state court's recommitment of Levine.

## B.

■ The state suggests that in reaching this same conclusion, the district court improperly failed to accord adequate deference to earlier state court findings of fact. Despite *de novo* review of the petition for habeas corpus, this court does give complete deference to evidence-supported state court findings. *Lundy v. Campbell*, 888 F.2d 467, 469–70 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990). The district court, and this court, should presume that state trial or appellate court findings of fact are correct unless it is shown by convincing evidence that they are not. *See Sumner*, 455 U.S. at 597, 102 S.Ct. at 1307; *see also* 28 U.S.C. § 2254(d). However, this presumption applies only to basic, primary or historical facts, and not to mixed questions of law and fact. *See Smith v. Jago*, 888 F.2d 399, 407–08 (6th Cir.1989), *cert. denied*, 495 U.S. 961, 110 S.Ct. 2572, 109 L.Ed.2d 754 (1990).

■ A number of courts have held that the question of mental competency is a mixed question of law and fact. *See, e.g., Dixon v. Jacobs*, 427 F.2d 589, 595 n. 17 (D.C.Cir.1970); *see also Drope v. Missouri*, 420 U.S. 162, 174–75, 95 S.Ct. 896, 905, 43 L.Ed.2d 103 (1975); *Card v. Singletary*, 963 F.2d 1440, 1443–44 (11th Cir.1992). We agree. Because the state court's determination that Levine was mentally ill and dangerous was a mixed question of fact and law, it is not entitled to section 2254(d)'s presumption of correctness. Moreover, in concluding that there is insufficient evidence to justify the recommittal of Levine, neither the district court nor this court has improperly rejected any findings of fact by the state court. We have not substituted our judgment on the credibility of the witnesses, or reweighed the evidence, or favored one expert's testimony over another in reaching the conclusion we do—because there is simply no evidence whatever in the record to support the state court's conclusion in 1988 that Levine was mentally ill and dangerous. The state judge based his conclusion that Levine was mentally ill and dangerous on the fact that he was once diagnosed as having schizophrenia, an incurable disease. His decision that the expert testimony was not "credible" was not a true credibility determina-

tion. Instead, it was the out-and-out rejection of unanimous expert opinion solely because it conflicted with the court's long held opinion that Levine was mentally ill and that "psychosis is an illness for which there is no known cure." A determination of that kind is not entitled to a presumption of correctness.

### C.

There is a question of the appropriate burden of proof to be applied by the federal court upon a habeas hearing, in the determination that the evidence is insufficient to Levine's recommitment. Ohio statutes provide that once a person is found not guilty by reason of insanity and is committed to an institution, that person is entitled to biannual hearings at which it must be shown by clear and convincing evidence that he is still mentally ill and subject to hospitalization by court order. Ohio Rev. Code Ann. § 5122.15(H). The district court concluded that it should apply the clear and convincing standard mandated by state law in determining whether the state court's finding comported with due process, but noted that the standard was really a moot question since, by *any* standard, there would be insufficient evidence.

The state claims that *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), mandates that this court review the evidence using a preponderance of the evidence standard. In *Jones*, the Supreme Court held that the standards of the District of Columbia Code relating to the initial commitment of a person found not guilty by reason of insanity were constitutionally permissible. It concluded that the "preponderance of the evidence standard comports with due process for commitment of insanity acquittees." *Id.* at 368, 103 S.Ct. at 3051.

We believe, however, that *Jones* does not prescribe the standard for our case. The *Jones* Court alluded to the wide variety of approaches in the various states for committing insanity acquittees; some jurisdic-

tions provide automatic commitment, while others use civil commitment procedures, while others have unique standards. *Id.* at 370 n. 20, 103 S.Ct. at 3053 n. 20. The Court did not indicate that any of these procedures were constitutionally suspect, and did not adopt any particular commitment procedures or burden of proof as being the constitutionally-mandated measure. Further, *Jones* spoke only to the *initial* commitment following acquittal, as opposed to *release* following commitment. It is this latter circumstance that is at issue in this case, and the *Jones* court specifically declined "to decide whether the District's procedures for release are constitutional." *Id.* at 363 n. 11, 103 S.Ct. at 3049 n. 11. *Jones* does not, therefore, provide clear authority for what the constitutionally required burden of proof is in a habeas proceeding of this nature.[5]

■ Nonetheless, we also disagree with the district court's conclusion that the state of Ohio created a liberty interest assuring that insanity acquittees may not be recommitted on a showing of less than clear and convincing evidence. A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable. *See Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In a habeas case, the federal court inquiry should be whether the state's procedures have passed federal constitutional muster, not whether there was an error in the state's applying its own law. In other words, the constitutional issue is whether the state court's application of its constitutionally adequate standard was so erroneous as to raise an independent due process violation. *See Maglaya v. Buchkoe*, 515 F.2d 265, 268 (6th Cir.1975). Therefore, the state procedural "clear and convincing" standard is not constitutionally mandated for Levine's case.

■ We conclude that this court should review the evidence presented to the state

---

5. We note, moreover, what the parties to this appeal apparently failed to recognize: in *Jones,* the burden was on the committed individual to prove sanity, rather than on the state to prove mental illness. No one has suggested here that the burden should be on anyone other than the state.

court at the 1988 hearing to determine whether any rational trier of fact could have found by a preponderance of the evidence that Levine was mentally ill and dangerous.[6] As we have already made clear, the state failed to meet this standard, and Levine's recommitment is not supported by sufficient evidence.

## D.

 The next question is whether Levine waived habeas corpus review of his constitutional claim of insufficient evidence by failing to fairly present the claim to the state courts. In petitioning for a writ of habeas corpus under 28 U.S.C. § 2254, a state prisoner must first fairly present his claim to the state courts to provide them with an opportunity to remedy any constitutional infirmity in the conviction. *Riggins v. McMackin*, 935 F.2d 790, 792–93 (6th Cir.1991). If a petitioner fails to present his claims to the state courts and is thus barred from pursuing relief in those courts, he will not be allowed to present his claims in federal court unless he can show cause to excuse his failure and actual prejudice to his defense at trial or on appeal. *Wainwright v. Sykes*, 433 U.S. 72, 77–91, 97 S.Ct. 2497, 2501–09, 53 L.Ed.2d 594 (1977). A petitioner "fairly presents" his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir.1987).

 The state contends that Levine did not raise his constitutional claim at the state court level, and that he was therefore barred from presenting it at the appellate level. In Ohio, an appellate court may, in its discretion, refuse to consider a claim that might have been called to the trial court's attention but was not raised until the appeal. *See State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988). An alleged procedural default becomes a bar to habeas corpus review of a federal claim only if the last state court to review the claim has clearly and expressly based its decision on the claimed procedural default. The procedural default must be independent of the federal question and adequate on its own to support the state's decision. *Coleman v. Thompson*, —— U.S. ——, ——, 111 S.Ct. 2546, 2557, 115 L.Ed.2d 640 (1991). There is a presumption that there is no procedural default (and thus no adequate and independent state ground for a state court decision) if the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of [the] state law ground is not clear from the face of the opinion." *Id.* (Citation omitted.)

Our review of the record reveals that Levine did present his constitutional claim to the state appellate court, and that the court of appeals disposed of his claim on the merits. Levine's first assignment of error to the court of appeals was that the state trial court judgment was based on insufficient evidence under state law. The second assignment of error was that if, in the alternative, the evidence was sufficient under Ohio law, then Ohio law must be unconstitutional. Within that assignment of error, the petitioner raised the due process argument raised here: that due process prohibits confinement of a person found not guilty by reason of insanity when that person is no longer mentally ill and dangerous, and that the evidence before the trial court could not have rationally led it to that conclusion. Therefore, Levine framed the sufficiency of the evidence argument as a constitutional issue.

 We must next consider, then, whether the state court of appeals disposed of the constitutional claim solely on the grounds of the state procedural bar.[7] If it did, federal habeas review would be barred. We are satisfied, however, that the state court of appeals disposed of the petitioner's

---

**6.** We emphasize, however, that we do not reach this conclusion because of *Jones*, which neither purports to set a constitutionally required standard, nor speaks to the precise set of circumstances before us.

**7.** We note that, as Levine's counsel pointed out in oral argument, the state trial court was necessarily aware of these constitutional questions at

federal constitutional claims substantively, based on federal constitutional law, by reasoning as follows:

> The defendant, in his second assignment of error, raises various claims challenging the constitutionality of Ohio's statutory commitment scheme as applied in this case. Our review of the record discloses that the defendant has waived these claims since he failed to raise them with the trial court. ... *Furthermore, this court in substance addressed and overruled these claims in the defendant's prior appeal....* Accordingly, *we overrule the defendant's second assignment of error* and affirm his recommitment to the Dayton Mental Health Center.

(Citations omitted) (emphasis added.) [8] The "furthermore" language employed by the court makes it clear that the state procedural bar was not the "independent state ground" for the holding, but rather, that the court was relying on the rationale it employed in 1983 for its dismissal of Levine's second assignment of error in 1988. And the 1983 decision unquestionably rested on federal constitutional law, citing the Fourteenth Amendment; *Jones,* 463 U.S. at 354, 103 S.Ct. at 3043; and *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), in support of the court's reasoning.

■ We conclude that the constitutional insufficiency of the evidence claim made in Levine's habeas petition is a claim that was fairly presented to the state court. This court is, therefore, not barred from considering his constitutional claim.[9]

### E.

Finally, the state protests the district court's decision to expand the record before it to include evidence of the 1992 psychiatric evaluations of Levine which, of course, was not presented to the state courts. The state contends that the expansion was not proper under Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, because the materials admitted were not relevant to the claim raised by his habeas corpus petition: whether there was constitutionally sufficient evidence presented at the *1988* hearing to recommit Levine. Moreover, the state contends that even if the evidence were relevant, the district court's decision to consider it was made too quickly, without giving the state an opportunity to respond.

■ Rule 7 reads in relevant part:
(a) Direction for expansion. If the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by inclusion of additional materials relevant to the determination of the merits of the petition.

Rule 7, 18 U.S.C. foll. § 2254. This court reviews a district court's decision to expand the record under Rule 7 for an abuse of discretion. *Ford v. Seabold,* 841 F.2d 677, 691 (6th Cir.1988), *cert. denied,* 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 334 (1988).

■ With regard to Levine's motion to expand the record, the district court stated:

> This Court notes that the Magistrate Judge's Report and Recommendations are based upon the medical testimony elicited at the July, 1988, confinement hearing, held almost four years ago. However, Levine has filed a Motion to

---

the time of the 1988 state hearing, because Levine had long before filed a petition for habeas review of the 1983 hearings, in which the same questions were raised.

8. The state court of appeals decision is the last state court judgment for these purposes, because the state supreme court's decision was not explained. *See Ylst v. Nunnemaker,* —— U.S. ——, ——, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991).

9. We note, moreover, that even were we to conclude that Levine failed to fairly present his

constitutional claim to the state court, we would be able to consider it now by applying the doctrine of *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). There, it was established that in the extraordinary case "where a constitutional violation has probably resulted in the conviction of one who is actually innocent," a court may consider the claim even absent a showing of cause and prejudice. *Id.* This rare exception could be applied here, where the constitutional violation demonstrated by Levine has resulted in the confinement of one who is actually not mentally ill.

Supplement the Record (Doc. # 140), seeking to have this Court consider his latest psychological evaluations. Since it is imperative that this Court's decision be based upon the most up-to-date medical evidence available, Levine's Motion to Supplement the record is sustained.

The district court then devoted two paragraphs to considering the new information, which was substantially the same as the 1988 information. It concluded by adopting the Report and Recommendations of the magistrate judge in its entirety which, as the district court explicitly noted, was issued *before* the record was expanded to include the 1992 information. The court then entered judgment for Levine on his petition for writ of habeas corpus.

We agree with the state that the 1992 evidence had no relevance to the issues before the district court. Nonetheless, it is evident from the district court's judgment that to the extent the court took that information into account in rendering its decision, the effect was merely cumulative. It is quite apparent that there is more than an ample basis for the district court's judgment. Thus, although it may have been an abuse of discretion to admit this evidence, the error was harmless.

### III.

### A.

 The state argues that the district court had no authority to grant a stay of state court proceedings simply in order to prevent the 1988 commitment order from becoming moot. We disagree. Under the Federal Habeas Corpus Act, the district court has authority to grant a stay of all state court proceedings that have the effect of defeating or impairing the federal court's jurisdiction. The Act provides that

[a] justice or judge of the United States before whom a habeas corpus proceeding

is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

28 U.S.C. § 2251.[10]

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court emphasized "the fundamental policy against federal interference with state criminal prosecutions." *Id.* at 46, 91 S.Ct. at 751. As explained in *Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971),

[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.

*Id.* at 85, 91 S.Ct. at 677. The district court utilized a three-step test to determine whether the stay was appropriate, analyzing: 1) whether substantial claims are set forth in the petition; 2) whether there is a demonstrated likelihood that the petition will prevail; and 3) whether there are extraordinary circumstances attending the petitioner's situation that would require the grant in order to make the writ of habeas corpus effective. *Cf. Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir.1987); *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir.1982). It found that the first two prongs of the test were already met, since it had already granted Levine's habeas petition. It found extraordinary circumstances existed because

the state court trial judge has scheduled a commitment hearing that has absolute-

---

**10.** The state also appears to suggest that the government's appeal, on June 26, of the district court's issuance of the writ of habeas corpus served to divest the district court of jurisdiction. We note, however, that the district court retained jurisdiction over matters "in aid of the appeal." *Jankovich v. Bowen*, 868 F.2d 867, 871

(6th Cir.1989). Staying the state court proceedings was necessary to preserve the status quo set by this court (namely, the stay of the issued writ) and so was clearly a matter "in aid of the appeal" that the district court had jurisdiction to order.

ly no legal possibility of making valid or constitutional, after the fact, a confinement which this Court has determined to be invalid of unconstitutional.... [W]hile this Court's Order remains unreversed and unvacated, the state court has no legal foundation or authority to confine Levine for the purpose of further mental evaluations or a further confinement hearing.

(Footnote omitted.) The district court further noted that if a confinement hearing were to be held, the hearing would render the 1988 confinement order moot before the constitutionality of that order can be determined in federal court. This would result in dragging "Levine into a Kafkaesque cycle of proceedings from which there is no escape...." The court noted that this "'twilight zone' scenario is not a mere hypothetical possibility [since a] new confinement order, issued ... in 1988, has already served to moot a previous decision of this Court's Magistrate which ordered Levine's release." We think it is plain that the district court's careful analysis led it to the correct conclusion. We find no merit in the state's argument.

### B.

▪ The state next argues that the district court abused its discretion in staying the state court proceedings because it gave the state inadequate time to respond to the motion. Counsel for the state received the motion on the afternoon of Thursday, July 2, 1992. The district court issued the stay on the morning of Tuesday, July 7, 1992. The intervening time included a three-day holiday weekend. Therefore, the state claims, it had inadequate time to respond. Furthermore, it argues, there was no justification for expediting the order, because the state court was not close to making a ruling on Levine's further commitment.

The local rules of the Southern District of Ohio permit twenty-one days in which to file a memorandum in opposition to a motion, but also allow a court to afford "an early hearing on any motion with or without the filing of memoranda by the par-

ties." S.D.Ohio R. 7.2(a)(2), 7.1(b)(3). This local rule is analogous to Fed.R.Civ.P. 6(d), requiring that a motion be served at least five days before it is decided by the court, although the local rule trumps Rule 6(d)'s notice provisions. *Rose Barge Line, Inc. v. Hicks*, 421 F.2d 163, 164 (8th Cir.1970). Application of Rule 6(d) has been reviewed under the abuse of discretion standard, and a court may shorten the period of notice for good cause shown. *In re Grand Jury*, 524 F.2d 209 (10th Cir.1975), *cert. dismissed*, 425 U.S. 927, 96 S.Ct. 1526, 47 L.Ed.2d 170 (1976); *United States v. Taulbee*, 476 F.2d 804 (9th Cir.1973); *Herron v. Herron*, 255 F.2d 589 (5th Cir.1958).

In its order granting the stay, the district court wrote:

Unbeknownst to this Court, ... the Cuyahoga County Common Pleas Court had issued an order on June 29, 1992, without notice to Levine or his counsel, directing state authorities to transport Levine from the DMHC to Cuyahoga County for a hearing on continued confinement. Although counsel for Levine and for Respondent Torvik had agreed that Levine's confinement hearing would be postponed pending the outcome of federal litigation, [the Ohio court] set a hearing for July 1, 1992. ... Levine has now asked this Court to issue an order staying further proceedings in state court ... pending resolution of Torvik's appeal....

(Citations and footnotes omitted.) This more than adequately explains what is extraordinary and unique about this case, and why the district court viewed the expedited decision as necessary. Thus, because the district court adequately explained its decision to expedite the order, and because in view of the circumstances,[11] five days was an objectively reasonable amount of time to respond, we find that the district court did not abuse its discretion.

### C.

The state argues that the district court abused its discretion because the stay is

---

**11.** We note that the district court ruled on other motions in as few as three days. We conclude

that the government should therefore have an-

inconsistent with its writ of habeas corpus. The state asserts that the district court's conditional writ releasing Levine expressly required the continuing supervision of the state trial court, because it required that the court 1) be notified within 24 hours in case of Levine's failure to attend his psychiatric appointments; 2) receive progress reports about Levine's condition every six months; and 3) be informed in the event of any psychological deterioration. Thus, it reasons, the stay of the state court proceedings is irreconcilable with the district court's mandate in the writ that the state trial court continue to exercise jurisdiction.

We again disagree. It is clear from the face of the stay that its purpose is to enjoin further commitment hearings that would moot Levine's current petition for writ of habeas corpus. It is equally clear that mandating that the state court be apprised of warning signals about Levine's behavior does not implicate those concerns. There is, therefore, no difficulty in reconciling the two district court decisions.

### IV.

For the foregoing reasons, we AFFIRM the district court's grant of a writ of habeas corpus conditionally releasing Michael Levine from the custody of the state of Ohio. We direct that Levine be released from custody forthwith. In so doing, however, we also direct that certain changes be made to the conditions of his release set forth by the district court. For ease of reference, we recapitulate all of those conditions, in their amended form:

1. The defendant shall reside in a different county than Cuyahoga, away from the victim's family;

2. The defendant shall receive follow-up once every two weeks at a community mental health center or by a private psychiatrist or clinical psychologist, with the first visit to be within 72 hours after release;

3. The Cuyahoga County Court of Common Pleas must be notified within 24 hours in case of the defendant's failure to attend his appointments without an excuse;

4. The community mental health center, private psychiatrist or clinical psychologist shall be required to send progress reports to the Cuyahoga County Court of Common Pleas detailing the defendant's condition once every six months; however, the first report should be submitted within 30 days after release; and

5. In case of any signs of deterioration in the mental condition of the defendant, immediate rehospitalization should be pursued and the Cuyahoga County Court of Common Pleas informed within 24 hours.

We also AFFIRM the district court's stay of state court proceedings.

### ORDER

April 14, 1993.

In separate filings, the appellants have petitioned for rehearing and moved for an order staying issuance of the mandate pending application to the Supreme Court for a writ of certiorari or, in the alternative, staying issuance of the mandate pending application to the Supreme Court for a stay. The appellee has responded in opposition to the motion for stay of the mandate.

Upon consideration of the petition for rehearing, it is ORDERED denied.

The motion for stay of the mandate is granted conditionally and issuance of the mandate is stayed for 30 days beyond the seven-day period automatically allowed by Fed.R.App.P. 41(a) when a petition for rehearing is denied.

ticipated an expedited decision on such an important motion.