Clarence Garfield BUFFALO, Petitioner,

v.

COMMISSIONER OF the DEPT. OF
MENTAL HEALTH AND MENTAL
RETARDATION, Respondent.

Civ. No. 94–0073–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Dec. 22, 1994.

Clarence Garfield Buffalo, pro se.

John H. McLees, Jr., Office of Atty. Gen.,
Richmond, VA, for respondent.

## MEMORANDUM OPINION

WILSON, District Judge.

On September 24, 1994, this court entered
a Memorandum Opinion and Order that con-
strued the habeas corpus petition filed by
Clarence Garfield Buffalo as challenging his
latest recommitment to the custody of the
Commissioner of the Department of Mental
Health and Mental Retardation. The court
has now received the transcript of Mr. Buffa-
lo's latest recommitment hearing, held in the
Circuit Court for the City of Lynchburg, as
well as documents submitted therein. Upon
review of the record presented, this court
concludes that the evidence submitted in
state court was sufficient to support a finding
that Mr. Buffalo is currently mentally ill and
dangerous. Accordingly, the court will deny
Mr. Buffalo's petition for habeas corpus re-
lief.

### I.

Mr. Clarence Garfield Buffalo is a fifty-two
year old male who has been institutionalized
for most of his life. At sixteen, Buffalo was
convicted of killing his uncle, for which he
was sentenced to ten years in prison. The
court possesses no record of Buffalo's mental
condition during this period. However, on
his release from prison, Buffalo was involun-
tarily committed to a mental institution,

Southwestern State Hospital, where he spent one year.

Buffalo was discharged from Southwestern State Hospital in June of 1979. He returned to Lynchburg, his hometown, and according to Buffalo, commenced a life of drinking, smoking marijuana, and taking excessive amounts of his medication, Thorazine. (Com. Exh. B., Psychiatric Evaluation of 6/4/80, at 3.) In a later psychiatric interview, Buffalo reported that he had been drinking a fifth and a half of liquor each day in Lynchburg, which made him feel "violent, horny, and wanting to go out and disco." (Com. Exh. B., at 3.)

On September 2, 1979, two months after his release from Southwestern State Hospital, Buffalo stabbed a man who lived in his apartment building. Buffalo was indicted in the Circuit Court for the City of Lynchburg for malicious wounding. At the preliminary hearing, the victim testified that Buffalo approached him outside of the apartment building, accused him of talking about him, and then without warning, pulled a knife from his belt and stabbed him in the chest. (9/21/79 Tr. at 5.) The case was tried by the circuit court on May 23, 1980. After hearing evidence, the court found Buffalo not guilty by reason of insanity and committed him to the custody of the Commissioner of Mental Health and Mental Retardation. (Com. Exh. A, Order of 5/23/80.) At this time, the Forensic Psychiatry Clinic at the University of Virginia Hospital performed a psychiatric evaluation of Buffalo and concluded that he was mildly mentally retarded and suffered from paranoid schizophrenia. (Com. Exh. B., at 6–7.)

While institutionalized, Buffalo was reviewed and recommitted at regular intervals pursuant to former Virginia Code § 19.2–181, and reports of Buffalo's mental condition were regularly sent to the circuit court. These reports frequently detailed Buffalo's delusioned and grandiose ideas about himself. For instance, Buffalo once asserted that he had been doing research to assist President Reagan in making decisions concerning the trade war with the Communists and Japan and that upon release from the hospital, he would go to Japan as a "test" person for the government to balance the budget. (Letter from Dr. Emelita F. Ramos to Judge Johnston of 5/4/87, at 1.) Buffalo has claimed to be the eldest son of the late President Garfield. (Letter from Ramos, at 1.) He has said that he participated in the 1986 Olympics. (Letter from Dr. Reddy Pasem to Judge Johnston of 5/19/87, at 2.) Buffalo has reported owning millions of dollars and of "help[ing] Mr. Bush with financial problems of the United States by lending money to the Government." (Letter from Dr. Leo Kirven to Judge Johnston of 10/17/89, at 2 (quoting Buffalo).) Buffalo has stated that he is the Godfather of the Mafia and that anyone who harmed him would meet with "the kiss." (Letter from Dr. Jorge Cortina and Dr. Barbara Haskins to Judge Perrow of 1/24/91, at 2.) He has also claimed to be Garfield the cat. (Letter from Cortina and Haskins, at 2.)

At the institution, Buffalo has been generally cooperative and nonviolent. On occasion, however, Buffalo has assaulted fellow patients, attacked health care professionals, and threatened others with violence. Recently, Buffalo sent a letter to Judge Perrow, written on Central State Hospital's letterhead, which contained a threat punishable as a Class 6 felony in the state of Virginia. (Letter from Judge Perrow to Dr. David Chu of 11/30/93.)

From 1980 to the present, Buffalo has repeatedly requested release from the mental hospital. He has filed a total of forty-three petitions for habeas corpus relief in state and federal court—most of the petitions incomprehensible. Buffalo's latest petition to this court challenged his confinement on grounds unreviewable due to the procedural bar rule. (Mem. Op. and Order of 9/26/94, at 5–6.) Because of Buffalo's mental limitations, however, the court construed his petition as a challenge to his latest recommitment to Central State Hospital.[1] An analysis of that issue follows.

---

1. The court liberally construed Mr. Buffalo's petition as meeting exhaustion requirements and evading the procedural bar rule in order to provide meaningful review to a petitioner with a long history of mental illness. However, such liberal construction does not require the court to

## II.

Mr. Buffalo was recommitted to the custody of the Commissioner of the Department of Mental Health and Mental Retardation pursuant to former Virginia Code § 19.2–181.[2] Although Virginia's statutory framework for recommitment of insanity acquittees has since been replaced, Mr. Buffalo's latest recommitment must still pass constitutional muster. After review of the state court's record, this court now concludes that there was sufficient evidence to find Mr. Buffalo currently mentally ill and dangerous.

A person acquitted for a criminal offense on the basis of insanity may, after requisite findings, be committed to an institution. *Jones v. United States*, 463 U.S. 354, 363, 103 S.Ct. 3043, 3049, 77 L.Ed.2d 694 (1983). Constitutional due process dictates that such an insanity acquittee "may be held as long as he is both mentally ill and dangerous, but no longer." *Foucha v. Louisiana*, 504 U.S. 71, ——, 112 S.Ct. 1780, 1784, 118 L.Ed.2d 437 (1992). When a committed insanity acquittee requests release by filing a petition for a writ of habeas corpus, the reviewing court must determine whether the acquittee is being properly held:

> [The] court should review the evidence presented to the state court ... to determine whether any rational trier of fact could have found by a preponderance of the evidence that [the insanity acquittee] was mentally ill and dangerous.

*Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.1993), *cert. denied*, —— U.S. ——, 113 S.Ct. 3001, 125 L.Ed.2d 694 (1993).

Mr. Buffalo was last recommitted in the summer of 1992 after a hearing in the Circuit Court for the City of Lynchburg. At the hearing, the court accepted into evidence two letters from doctors who had recently examined Mr. Buffalo. The first letter was a recommendation by Mr. Buffalo's treatment team, a psychiatrist, a psychologist, and a social worker, at Central State Hospital. Stating that Mr. Buffalo "manifests signs of major mental illnesses" and that "his direct discharge back to the community could be dangerous to the public's peace and safety or to himself," the treatment team recommended that Mr. Buffalo be recommitted to the civil side of Central State Hospital. (Letter from Ronald Branch, Amenra Tuason, M.D., and Kendra Pugh, Psy. D. to David Bice of 2/21/92.) Dr. William J. Carroll, who submitted the second letter of recommendation, found Mr. Buffalo "still insane" and stated that Mr. Buffalo should "still be considered dangerous to public peace and safety or to himself." (Letter from Dr. Carroll to Judge Perrow of 6/23/92, at 2.) Dr. Carroll recommended that Mr. Buffalo be recommitted to Central State Hospital. (Letter from Dr. Carroll, at 3.) On the basis of these recommendations and testimony heard in open court, the circuit court found Mr. Buffalo currently insane and dangerous, and it recommitted Mr. Buffalo to the custody of the Commissioner of the Department of Mental Health and Mental Retardation. (Com. Exh. BB, Order of 8/11/92.)

This court finds no constitutional deficiency here. The evidence before the circuit court was clearly sufficient for a rational trier of fact to find, by a preponderance of the evidence, that Mr. Buffalo was mentally ill and dangerous. The constitution requires no more. Accordingly, the court will deny Mr. Buffalo's petition for a writ of habeas corpus.

---

review every possible ground upon which Mr. Buffalo could have challenged his latest recommitment. The most compelling issue here is whether Mr. Buffalo should remain institutionalized. The constitution allows an insanity acquittee to be held only as long as he is mentally ill and dangerous. *Foucha v. Louisiana*, 504 U.S. 71, ——, 112 S.Ct. 1780, 1784, 118 L.Ed.2d 437 (1992). This court will only review Mr. Buffalo's case as to that question.

2. Virginia Code § 19.2–181 was repealed as of July 1, 1992 and replaced with a new statutory framework for recommitment proceedings. Although Mr. Buffalo's recommitment hearing occurred on July 10, 1992, after the repeal became effective, the judge in the Circuit Court for the City of Lynchburg reviewed Mr. Buffalo's case under § 19.2–181. (Order of 8/11/92, at 1); (Letter from Judge Perrow to Dr. Heilbrun of 12/31/92, at 1.)