NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0208n.06

No. 20-1349

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOHN LAUVE; ROBERT DAVIS,

     Plaintiffs-Appellants,

v.

JANICE WINFREY, in her official capacity as Detroit City Clerk; DANIEL BAXTER, in his official capacity as Director of Elections for City of Detroit Election Commission; DETROIT CITY COUNCIL,

     Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Apr 20, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

Before: ROGERS, BUSH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. In 2017, the Detroit City Council approved an ordinance to provide additional funding for the construction of an arena in downtown Detroit for the Detroit Pistons. John Lauve and Robert Davis launched a petition drive to repeal the ordinance by referendum. They submitted the petitions to the Detroit City Clerk, who rejected them as woefully deficient—they contained only 362 signatures, well short of the 4,054 signatures needed to send the measure to the ballot. Lauve and Davis returned 15 days later with over 7,000 signatures, but the Clerk rejected the petitions as untimely. So Lauve and Davis sued various individuals and the Detroit City Council, raising several claims related to the rejection of their petitions. The district court dismissed the complaint, and we AFFIRM in part, VACATE in part, and REMAND for further proceedings.

I.

To provide additional funding for a new basketball arena for the Detroit Pistons in downtown Detroit, the Detroit City Council approved Detroit City Ordinance, No. 19-17 (the Ordinance). The Ordinance authorized the City of Detroit Downtown Development Authority "to sell subordinate tax increment revenue bonds in an amount not to exceed $36.0 million . . . to provide $34.5 million to finance additional costs of the construction" of the new arena. The Ordinance went into effect on July 5, 2017.

Section 12-101 of the Detroit City Charter reserves to the voters of the City the power to nullify certain ordinances through referendum petitions. The petitions "must be signed by voters of the City, not less in number than three percent (3%) of all votes cast for the office of Mayor at the preceding regular city general election." Detroit, Mich., City Charter, § 12-102. The Charter provides that referendum petitions "shall be filed with the Office of the City Clerk," who then "shall verify the number of petitions that were filed and transmit petitions to the Department of Elections for a canvass of the petitions." *Id.* § 12-104. "Within ten (10) days of receipt, the Department of Elections shall canvass the signatures thereon to determine their sufficiency and make a report of the result to the City Council." *Id.* If the "canvass discloses that the number of signatures on petitions for any initiative or referendum is insufficient, additional petitions may be filed within fifteen (15) days after the Clerk's determination." *Id.* § 12-105. "When this fifteen (15) day period has expired, the Clerk shall again canvass the signatures on the petitions filed to determine their sufficiency and make a report of the result." *Id.* The Charter also provides, "Where a referendum on an ordinance has been invoked under section 12-103, the effect of the ordinance shall be delayed or suspended until the City Clerk has made a final report that the referendum petitions are insufficient or, if the referendum petitions are sufficient, until the voters

of the City have expressed their support for the ordinance in the referendum election." *Id.* § 12-106. The referendum process does not apply to ordinances involving the budget or the appropriation of money, however. *Id.* § 12-101.

Lauve and Davis circulated referendum petitions to repeal the Ordinance. Under § 12-103 of the Charter, they had 30 days to file the petitions. The parties agree that the deadline to file the petitions was August 5, 2017. Lauve and Davis timely presented the petitions to the office of the Detroit City Clerk, Janice Winfrey, on August 4. The petitions contained only 362 signatures, well short of the necessary 4,054 signatures.

Lauve and Davis allege that when they presented their petitions, the City Clerk's office accepted the petitions and provided Lauve with a receipt of signatures. According to the Director of Elections, Daniel Baxter, however, the City Clerk's office told Lauve and Davis that it could not accept the petitions because of the signature deficiency, but plaintiffs insisted on leaving them anyway. Later that day, Baxter sent a letter to Lauve explaining that the petitions were invalid under the Charter. The letter stated, "This letter will confirm that the City Clerk has not and cannot accept the petitions because the filing is null and void under the City Charter."

Lauve and Davis returned to the City Clerk's office on August 18, 2017, this time with additional referendum petitions containing 7,927 signatures. They sought to take advantage of the fifteen-day window provided by § 12-105. Baxter again rejected the petitions, finding them untimely.

Lauve and Davis sued Baxter, Winfrey, and the Detroit City Council (collectively, the City). They raised due process and equal protection claims, filed an emergency motion for a writ of mandamus to compel the City to accept the petitions and canvass them, and asked for several

declaratory judgments. The district court dismissed all claims at various stages of the proceedings. Plaintiffs now appeal the district court's dismissal of some of their claims.

II.

The district court dismissed most of plaintiffs' claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). We review de novo a Rule 12(b)(6) dismissal and "construe the complaint in the light most favorable to the plaintiff[s], accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff[s]." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012) (quoting *Watson Carpet & Floor Covering, Inc. v. Mohawk, Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011)). The district court granted summary judgment to the City on plaintiffs' equal protection claim. We review de novo. *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 394 (6th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A. Federal Claims

*Due Process.* Lauve and Davis first challenge the dismissal of their procedural due process claims. To establish a procedural due process claim, Lauve and Davis "must show that (1) [they] had a life, liberty, or property interest protected by the Due Process Clause; (2) [they were] deprived of this protected interest; and (3) the state did not afford adequate procedural rights." *Schmitt v. LaRose*, 933 F.3d 628, 642 (6th Cir. 2019). Plaintiffs argue that they have a protected liberty interest in having their referendum petitions accepted and canvassed by the City in accordance with the Charter and that the City violated their federal constitutional rights to due process by failing to follow the Charter.

On plaintiffs' view of the facts and the law, the City Clerk violated the Charter in three ways: (1) by not accepting the tendered 362 signatures on the day before the deadline pursuant to § 12-104; (2) by not automatically extending the clock by 15 days under § 12-105 to give plaintiffs time to collect almost 4,000 additional signatures in order to meet the required number; and (3) by not immediately suspending the Ordinance upon the presentation of the 362 signatures pursuant to § 12-106—all without notice and a meaningful opportunity to be heard. According to Lauve and Davis, the Clerk's failure to follow the Charter in these respects amounts to a violation of their due process rights.

We see several problems with plaintiffs' due process claims. Even if it were true that the Clerk violated the Charter in the ways articulated by plaintiffs, that would show only that the Clerk had failed to comply with municipal law. Lauve and Davis brought their due process claims pursuant to 42 U.S.C. § 1983. It is a long-established principle "that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983." *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010); *see also Bates v. Sponberg*, 547 F.2d 325, 331 (6th Cir. 1976) ("Since 42 U.S.C. § 1983 offers relief only to those persons whose federal statutory or federal constitutional rights have been violated, we conclude that the mere departure from the university regulations, standing alone, did not deprive Bates of any right which can be asserted in this court."). Similarly, "[v]iolation of a state's formal procedure . . . does not in and of itself implicate constitutional due process concerns." *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Id.* (quoting *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)). "[I]t is

only when [a state official's] disregard of [the] rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions." *Bates*, 547 F.2d at 329–30. Lauve and Davis do not explain how the City's failure to follow the provisions of the Charter amounts to a due process violation.

Nor is it clear that the Charter provisions governing the referendum process could create a constitutionally protected liberty interest. *See Richardson v. Texas Sec'y of State*, 978 F.3d 220, 230–33 (5th Cir. 2020) (noting that "state-created liberty interests are generally limited to freedom from restraint" and concluding that a state-created mail-in-ballot regime did not create a protected liberty interest (internal quotation marks omitted)). *But see Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 409 (6th Cir. 2020) (Moore, J., dissenting) (concluding that a Tennessee absentee-voting law "create[d] a protected liberty interest in voting absentee by mail"). Lauve and Davis offer no analysis of that question, other than to offer boilerplate language from due process caselaw outside the election law realm.

In the end, though, we need not decide whether plaintiffs had a constitutionally protected liberty interest because plaintiffs' due process claims fail for a much simpler reason: they have failed to explain why the procedure afforded by the City was insufficient to satisfy the Constitution. *LaRose*, 933 F.3d at 642.

Lauve and Davis assert that they received neither notice that the Clerk would fail to comply with the Charter, as they read it, nor an opportunity to be heard before the alleged deprivation. But they fail to account for the fact that post-deprivation process can also satisfy the Constitution. Indeed, in a closely analogous case, we held that "afford[ing] aggrieved ballot-initiative proponents" access to "mandamus relief in the state courts" constituted "a satisfactory post-deprivation remedy for the purposes of procedural due process." *Id.*; *see also Martinez v. City of*

*Cleveland*, 700 F. App'x 521, 523 (6th Cir. 2017) (concluding that there was no due process violation because the plaintiff "had at least one adequate state-law remedy available to him"; "he sought a writ of mandamus in this very action"). Michigan affords such relief. *See Protect Our Jobs v. Bd. of State Canvassers*, 822 N.W.2d 534, 548 (Mich. 2012). Plaintiffs have failed to explain why Michigan's procedure is inadequate. Accordingly, their due process claims fail.

*Equal Protection.* Lauve and Davis also brought a "class of one" equal protection claim. To establish a "class of one" claim, plaintiffs must show that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The district court granted summary judgment to the City on this claim on the ground that plaintiffs could not show they were treated differently from other similarly situated individuals.

Lauve and Davis say that their referendum petitions were treated less favorably than initiative petitions submitted by Thomas Barrow in 2015. They say that Barrow submitted petitions with fewer than 4,054 signatures and yet was given 15 days to rectify the deficiency. But, as the district court appropriately recognized, the facts tell a different story.

Initiative petitions must be submitted 140 days before the election at which they are to be placed on the ballot. Detroit, Mich., City Charter, § 12-103. Over two sets of filings well before the deadline, Barrow submitted petitions containing a combined total of 5,244 signatures. The Department of Elections canvassed the signatures and determined that "the total number of valid signatures submitted w[as] 3,833." The City Clerk informed Barrow that he could submit more petitions to make up the deficiency pursuant to § 12-105. Barrow did so five days later, and the City Clerk determined that he had submitted a sufficient number of valid signatures to place the initiative on the ballot. So unlike Lauve and Davis, Barrow submitted more than the requisite

number of signatures before the deadline. As the district court appropriately concluded, "Plaintiffs were not similarly situated to Barrow because they failed to timely submit the threshold number of signatures."

On appeal, Lauve and Davis offer nothing to rebut the district court's determination. Instead, they baldly assert that Barrow submitted facially invalid petitions before the deadline (without grappling with the record evidence supporting the district court's finding) and argue *why* the City might have treated them differently than Barrow, but never explain *how*. Lauve and Davis therefore have failed to establish error in the district court's determination, and their equal protection claim fails.

*Void for Vagueness.* Lauve and Davis sought a declaratory judgment that "§ 12-101 of the 2012 Detroit City Charter, as applied to [them], is unconstitutionally void-for-vagueness." Appellants Br. at 30. Section 12-101 says that the referendum "power[] do[es] not extend to the budget or any ordinance for the appropriation of money." Plaintiffs argue that § 12-101 is unconstitutionally vague because it "does not define the terms 'appropriation of money' and does not provide any clarity as to what constitutes 'an ordinance for the appropriation of money.'" Appellants Br. at 33. The district court determined that Lauve and Davis lacked standing to seek a declaratory judgment because they could not show that their injuries would be redressed by a decision in their favor. We agree.

To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). As the district court recognized, the City rejected the proffered petitions because they were short on signatures; not because the Ordinance was for the appropriation of money. Since the appropriation issue

played no role in the decision, the district court determined that declaring § 12-101 unconstitutionally vague would not redress plaintiffs' alleged injury. Plaintiffs therefore could not establish the third element of standing. On appeal, plaintiffs do nothing to contest the district court's conclusion in this regard. Seeing no errors in the district court's conclusion, we agree that plaintiffs lack standing to pursue a declaratory judgment with respect to the constitutionality of § 12-101.[1]

### B. State Law Claims

Finally, plaintiffs raise two state law claims. They challenge the district court's denial of their request for a state law writ of mandamus to compel the City to accept and canvass the petitions under the Charter, and to give them an additional fifteen days to provide the necessary signatures (Count VII of the Amended Complaint). Similarly, they challenge the district court's dismissal of their claim for a declaratory judgment under state law declaring that the Ordinance should have been suspended until the City canvassed the petitions (Count VIII of the Amended Complaint).

The City contends that these claims are moot. They did the same below, but the district court bypassed this jurisdictional question and others (including whether it was appropriate to exercise supplemental jurisdiction over the state law claims) in favor of denying the claims on the merits. That was improper. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (stating that a court "may not assume jurisdiction for the purpose of deciding the merits of the case").

A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)

---

[1] The district court also concluded that Lauve and Davis had failed to show the second element of standing—causation. Because we agree with the district court on redressability, we do not address causation.

(citation omitted). An actual dispute must exist throughout litigation. *Kiser v. Kamdar*, 752 F. App'x 272, 274 (6th Cir. 2018). "An actual dispute does not exist when a party requests relief that would have no effect in the real world." *Id.*

The record reveals that the Detroit City Council adopted the Ordinance in order to provide additional funding for a new Detroit Pistons arena in downtown Detroit. The Ordinance authorized the City of Detroit Downtown Development Authority (DDA) "to sell subordinate tax increment revenue bonds in an amount not to exceed $36.0 million . . . to provide $34.5 million to finance additional costs of the construction" of the new arena. We are told that "[o]n August 10, 2017, the DDA issued and sold the Series 2017 Bonds to Bank of America, N.A., as the sole purchaser, in a private placement transaction, upon the DDA's receipt of the full purchase price of the Series 2017 Bonds in the amount of $36.0 million." And we know that the arena has been built and the Detroit Pistons have been playing in it since 2017.

So if the bonds have been sold and the arena has been built, does the Ordinance have ongoing effect? The parties do not say. Would repealing the Ordinance have any real-world effect? We cannot tell on the record before us whether these, or other issues, deprive the federal courts of jurisdiction over plaintiffs' state law claims. Because we cannot pass on the merits of the state law claims without knowing whether the district court had jurisdiction to do so, we vacate the district court's order dismissing Counts VII and VIII of the Amended Complaint and remand for it to consider the jurisdictional questions in the first instance.

\* \* \*

We AFFIRM the judgment of the district court except that we VACATE the judgment as to Counts VII and VIII of the Amended Complaint and REMAND for further proceedings consistent with this opinion.