**Steven PURISCH, Plaintiff–Appellant,**

v.

**TENNESSEE TECHNOLOGICAL UNIVERSITY; Angelo A. Volpe, individually and in his official capacity; Joseph Lerner, individually and in his official capacity; Reginald Mazeres; Brian O'Connor; Jacob Beard; Edmond Dixon; and Rebecca Quattlebaum, Defendants–Appellees.**

No. 94–5899.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1995.

Decided March 1, 1996.

Kent M. Weeks (Argued and Briefed), Weeks, Turner, Anderson & Russell, Nashville, TN, for Steven Purisch.

S. Elizabeth Martin (Argued and Briefed), Office of the Atty. Gen., Nashville, TN, for Tennessee Technological University.

Michael J. Passino, Passino & Minton, Nashville, TN, S. Elizabeth Martin, Office of the Atty, Gen., Nashville, TN, for Angelo A. Volpe.

Marian F. Harrison, Willis & Knight, Nashville, TN, for Joseph Lerner.

Stanley Kweller (Briefed), Robert L. Jackson & Associates, Nashville, TN, for Reginald Mazeres.

Cyrus L. Booker (Briefed), Booker & Associates, Nashville, TN, for Brian O'Connor.

Alan M. Parker (Argued and Briefed), Lewis, King, Krieg & Waldrop, Knoxville, TN, for Jacob Beard.

Jon E. Jones (Briefed), Cookeville, TN, for Edmond Dixon.

Margaret L. Behm, Dodson, Parker, Shipley, Behm & Seaborg, Nashville, TN, for Rebecca Quattlebaum.

Before: KENNEDY and MOORE, Circuit Judges; POTTER, District Judge.*

MOORE, Circuit Judge.

Steven Purisch appeals the district court's order granting the defendants' motion for summary judgment on various state and federal claims arising from Tennessee Technological University's denial of tenure to Purisch. We affirm for the reasons we explain below.

## I

After serving a four-year probationary period, professors at Tennessee Technological University ("Tennessee Tech") are eligible to be considered for tenure. Tenured faculty on the departmental tenure committee perform the initial evaluation. The committee studies a candidate's application, drafts a report, and votes on whether the candidate should be granted tenure. The committee's decision is then subject to review by a suc-

* The Honorable John W. Potter, United States District Judge for the Northern District of Ohio, sitting by designation.

cession of university administrators, each of whom issues his or her own recommendation after examining the previous recommendations and the committee's work. These reviewing officials consist of the departmental chairperson, the dean of the college, the university provost, and the university president, in that order. If the president recommends that tenure be granted, the State Board of Regents makes the final decision. *See* Tenn. Code Ann. § 49–8–301(c)(1).

In 1990, Dr. Steven Purisch finished his fourth year of teaching mathematics at Tennessee Tech and thus became eligible to be considered for a tenured position. The mathematics department's tenure committee, however, recommended against awarding tenure to Purisch: nine committee members voted to deny tenure, six voted to grant tenure, and one voted to extend Purisch's probationary period. Of the four administrative personnel reviewing the committee's report, only mathematics department chair Dr. Alice Mason opposed the committee's recommendation and recommended tenure. In April 1991, university president Angelo Volpe notified Purisch that Tennessee Tech had decided not to award him tenure.

Purisch then filed a grievance against everyone who had recommended against his tenure, including the members of the tenure committee, Volpe, and college dean Joseph Lerner. Consistent with the university's policies, Volpe formed a grievance committee from a pool of Tennessee Tech professors, appointing Rebecca Quattlebaum, the dean of graduate studies, to be the grievance committee's hearing officer. After considering the testimony of thirteen witnesses, the grievance committee found no violation of university policy or state law in Purisch's tenure assessment. It therefore recommended that no further action be taken. Volpe reviewed the committee's report and agreed with its conclusion.

Purisch then sued Tennessee Tech and seven of its employees. Originally filed in state court, the case was removed by the defendants to federal court. The complaint alleged that: (1) Reginald Mazeres, Brian O'Connor, Jacob Beard, and Edmond Dixon (the "professor-defendants"), had procured,

as members of the tenure committee, Tennessee Tech's breach of Purisch's alleged tenure review contract in violation of Tennessee Code § 47–50–109 and conspired to interfere with Purisch's employment relationship with Tennessee Tech; (2) Lerner violated his duty of good faith and fair dealing by applying improper criteria during his review of Purisch's tenure application; (3) Quattlebaum was liable under 42 U.S.C. § 1983 for violating Purisch's federal procedural due process and equal protection rights during the grievance proceedings; and (4) Volpe violated his duty of good faith and fair dealing by failing to apply proper criteria during his review of Purisch's tenure application and was also liable·under section 1983 for not affording Purisch procedural due process during his review of the grievance proceedings. Purisch sought damages, including punitive damages, and "reinstatement pending a fair tenure review." On the eve of trial, the district court granted the defendants' motion for summary judgment. This appeal followed.

## II

We review a grant of summary judgment de novo. *City Management Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 250 (6th Cir.1994). All facts and inferences drawn therefrom are considered in the light most favorable to the appellant. *Id.* Reversal is warranted if the appellant can demonstrate the existence of a genuine issue of material fact, "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III

The district court held that the claims against the professor-defendants for procurement of breach of contract and conspiracy to interfere with another's employment were untimely under the one-year statute of limitations applicable to "personal tort" suits. *See* Tenn.Code Ann. § 28–3–104. Purisch argues that he filed his complaint within a year of the accrual of his cause of action and that in any event the proper statute of limita-

tions for his suit is three years. *See* Tenn. Code Ann. § 28–3–105 (establishing three-year statute of limitations for "property tort" actions). We decline to reach this statute of limitations issue and shall instead base our decision on the merits of the claims, which all interested parties have addressed and fully briefed. *See Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981) (disposing of claim on merits after parties addressed merits both in district court and on appeal even though district court had based decision on statute of limitations).

### A

■ In order to recover for procurement of a breach of contract under Tennessee Code § 47–50–109, a plaintiff must show "that there was a legal contract, of which the wrongdoer was aware, that he maliciously intended to induce a breach, and there must have been a breach, proximately caused by his acts, resulting in damages." *Polk and Sullivan, Inc. v. United Cities Gas Co.,* 783 S.W.2d 538, 543 (Tenn.1989) (noting that statute simply codifies common-law tort action). A party to a contract cannot be held liable for procuring the breach of that contract. *Ladd v. Roane Hosiery, Inc.,* 556 S.W.2d 758, 760 (Tenn.1977). Nor is a corporate employee liable under section 47–50–109 for procurement of a breach of the corporation's contract unless the employee was acting "contrary to the corporation." *Woods v. Helmi,* 758 S.W.2d 219, 225 (Tenn.Ct.App. 1988) (citing *Ladd,* 556 S.W.2d at 760 (implying that employee acting within scope of employment duties is not liable for procurement of breach of contract between employer and plaintiff)).

■ Even if we assume *arguendo* that a breach of an existing contract did occur, the record reveals no genuine issue of fact material to Purisch's section 47–50–109 claim. The allegedly unlawful conduct of professors Mazeres, Beard, O'Connor, and Dixon occurred as part of their duties on the tenure committee. Tennessee Tech policy required them to sit in judgment on Purisch's professional prospects. Purisch focuses on certain of the committee's actions as being indicative of the professor-defendants' malicious intent

and personal ill will, such as the exclusion of mathematics department chair Mason from the committee's final evaluation meeting and the failure to include Purisch's most recent student evaluations in his tenure dossier. These actions, however, were within the committee's discretion under university policy and simply constituted administrative decisions made in the course of the professor-defendants' employment. Summary judgment against Purisch on this claim was appropriate.

### B

■ Purisch's second claim against the professor-defendants is similar to his first. Tennessee recognizes a common-law action for interference with another's employment. *See Forrester v. Stockstill,* 869 S.W.2d 328, 330–31 (Tenn.1994); *Large v. Dick,* 207 Tenn. 664, 343 S.W.2d 693, 694 (1960); *Dukes v. Brotherhood of Painters, Decorators & Paperhangers of America, Local Union No. 437,* 191 Tenn. 495, 235 S.W.2d 7, 9–10 (1950). An employee of a corporation, however, is not liable for interference in the corporation's contracts if he "acts within the general range of his authority, and his actions are substantially motivated by an intent to further the interest of the corporation." *Forrester,* 869 S.W.2d at 334–35. The same standard applies to claims of conspiracy to interfere with another's employment. *See id.* at 330 ("[I]f [the underlying] claim fails, then the claim for conspiracy must also fail. . . ."). The evidence relevant to this intentional interference with employment claim is therefore the same as that which we considered under the section 47–50–109 claim, and it merits no different conclusion in this context. The conduct of professors Mazeres, Beard, O'Connor, and Dixon was within the scope of their duties as members of the mathematics department's tenure committee; if they hindered Purisch's receipt of tenure, they did so for professional, not personal, reasons. Summary judgment against Purisch on this claim was also proper.

### IV

■ We next turn to the claims that Volpe and Lerner breached their state law

duty of good faith and fair dealing in their reviews of the tenure committee's recommendation. The district court's summary judgment on this issue was based on immunity under Tennessee Code § 9–8–307(h). State employees have immunity under this statute "for acts or omissions within the scope of [their] employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." *Id.* This immunity applies to state law claims filed in federal as well as state courts. *Walker v. Norris,* 917 F.2d 1449, 1458 (6th Cir.1990). The only issue before us is whether Volpe and Lerner qualify for such immunity.

■ Case law on section 9–8–307(h) is surprisingly scarce. For instance, the Tennessee courts have not revealed which party bears the burden of proof on the existence of immunity. Several unpublished decisions of the state's appellate courts, however, have assumed that the plaintiff must plead facts sufficient to withstand the defendant's assertion of immunity under section 9–8–307(h). *See Cooksey v. Peach,* No. 01–A–01–9306–CH00247, 1993 WL 328065, at *3 (Tenn.Ct. App. Aug. 20, 1993); *Goodwin v. Bell,* No. 01–A–019111CV00402, 1992 WL 24988, at *2 (Tenn.Ct.App. Feb. 14, 1992); *Smithson v. Tennessee,* No. 01A01–9012CH00453, 1991 WL 95691, at *1 (Tenn.Ct.App. June 7, 1991). Likewise, in related areas of the law, plaintiffs tend to bear the burden of persuasion when defendants assert immunity as government workers. *See, e.g., Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir.1987) (holding that plaintiff in action under 42 U.S.C. § 1983 must prove immunity defense inapplicable "[o]nce the issue . . . is properly injected in the case"). We believe that Tennessee would follow this model when applying section 9–8–307(h).

Applying the *Dominque* standard to the instant case, we hold that the evidence in the record, viewed in the light most favorable to Purisch, indicates that Volpe and Lerner have immunity for their conduct. Although Tennessee courts have not defined "willful" or "malicious" as used in section 9–8–307(h), no reasonable construction of those terms could apply to the actions of Volpe and Ler-

ner. Nothing in the record suggests that a deliberate desire to wrong Purisch motivated their failure to support his tenure application. Nor does the evidence reveal any criminal conduct or personal advantage that Volpe and Lerner could have gained from opposing Purisch's candidacy.

At most, Purisch has created a genuine issue of fact material to Volpe's and Lerner's unmindful attitude towards certain university procedures. We do not believe that such a showing is sufficient to overcome the immunity provided by state law. *Cf. Cagle v. United States,* 937 F.2d 1073, 1076–77 (6th Cir.1991) (holding that liability for "willful and malicious conduct" under Tennessee statute granting immunity to landowners for public use of their land requires some purposefully wrongful action beyond mere negligence). The district court correctly granted summary judgment on this basis since Purisch has failed to show misconduct beyond perhaps negligent failure to follow certain university procedures.

## V

■ Last, we address the claims under 42 U.S.C. § 1983. Purisch argues that Volpe's and Quattlebaum's handling of his grievance violated his right to procedural due process under the Fourteenth Amendment of the U.S. Constitution. He also contends that Quattlebaum's conduct violated his Fourteenth Amendment equal protection rights. The district court granted summary judgment, holding that Quattlebaum was protected from suit based on quasi-judicial immunity under *Watts v. Burkhart,* 978 F.2d 269 (6th Cir.1992) (en banc), and that Volpe was protected from suit based on state employee immunity under Tennessee Code section 9–8–307(h), discussed above.

## A

We decline to affirm the summary judgment on the grounds on which the district court relied. First, state law cannot immunize Volpe from section 1983 liability. *See Walker v. Norris,* 917 F.2d 1449, 1458 n. 14 (6th Cir.1990). Second, neither Quattlebaum

nor Volpe is entitled to quasi-judicial absolute immunity.

Quasi-judicial absolute immunity is available to "state officials subject to restraints comparable to those imposed by the Administrative Procedure Act and performing adjudicatory functions in resolving potentially heated controversies." *Watts,* 978 F.2d at 273. In *Bettencourt v. Board of Registration in Medicine,* 904 F.2d 772 (1st Cir.1990), the First Circuit adopted a three-part test for immunity, which the Sixth Circuit approved in *Watts.* Quasi-judicial immunity should be granted to state officials when "(1) their positions are akin to that of judges; (2) the potential for vexatious lawsuits is great; and (3) enough safeguards exist to protect [the complainant's] constitutional rights." *Watts,* 978 F.2d at 278 (quoting *Bettencourt,* 904 F.2d at 784 n. 15). The Tennessee Tech faculty grievance procedure falls short of the *Watts* requirements for quasi-judicial immunity in several respects.

First, although the Tennessee Tech grievance committee performs the traditional adjudicatory functions of taking evidence, making factual and legal determinations, and writing opinions, it does not possess the independence required for quasi-judicial immunity. Its members are employees of Tennessee Tech and are subordinates of the university president, who selects the committee's members and reviews its decisions. *See Cleavinger v. Saxner,* 474 U.S. 193, 203–04, 106 S.Ct. 496, 501–02, 88 L.Ed.2d 507 (1985) (holding that prison disciplinary board members who are employees of the Bureau of Prisons and are direct subordinates of the warden who will review their decisions are not sufficiently independent to be absolutely immune); *Watts,* 978 F.2d at 276 (granting quasi-judicial absolute immunity where members of medical board were independent physicians rather than employees of institution that was subject of complaint and where board members did "not have to worry about their decisions being reviewed by the governor who appointed them"). The district court presumed that Quattlebaum was independent because she was a tenured professor, but she was nonetheless a subordinate of the Tennessee Tech

president, and her job as dean was not subject to the same degree of protection as her tenured teaching position.

Second, the Tennessee Tech grievance process does not provide the safeguards that this court has required for quasi-judicial immunity. A grievant at Tennessee Tech may have an advisor at the hearing, but that advisor cannot act as an advocate, so a grievant does not have the same right to counsel as in a judicial proceeding. *See Bettencourt,* 904 F.2d at 783 (noting that right to counsel is a relevant safeguard). Nor does a Tennessee Tech grievant have the right to cross-examine or confront witnesses, except in sexual harassment cases. The grievant may submit questions for the committee to ask of witnesses, but the committee is not required to ask those questions. In fact, Quattlebaum testified that the committee did not have the power to subpoena witnesses. *See id.* (noting that right to cross-examine is a relevant safeguard). Finally, the Tennessee Tech grievance policy indicates that it is not subject to the requirements of the Tennessee Administrative Procedures Act, and provides only for appeal to the university chancellor, not to the courts. *See Watts,* 978 F.2d at 275–77 (holding that Tennessee Board of Medical Examiners had adequate safeguards because it was required to comply with Tennessee Administrative Procedures Act and because its decisions were reviewable in court); *Bettencourt,* 904 F.2d at 783 (holding that direct appeal to the state's highest court was relevant safeguard). In short, the Tennessee Tech grievance proceedings do not meet the *Watts* test, and therefore neither Quattlebaum nor Volpe is entitled to quasi-judicial absolute immunity.

**B**

Nevertheless, we affirm the district court's summary judgment on the section 1983 claims, based on an alternative theory that all interested parties have addressed and fully briefed: qualified immunity. *See Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981) ("An appellate court can find an alternative basis for concluding that a party is entitled to summary judgment ..., provided it proceeds carefully so the oppos-

ing party is not denied an opportunity to respond to the new theory."). Government officials who perform discretionary functions are entitled to qualified immunity from civil damage suits arising out of the performance of their official duties unless they violate "clearly established constitutional rights of which a reasonable person would have known." *Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995). Here, Volpe and Quattlebaum have presented facts indicating that they were acting within their discretionary authority, and so the burden of proving that qualified immunity does not apply falls on Purisch. *Mackey v. Dyke,* 29 F.3d 1086, 1095 (6th Cir.1994).

■ The threshold inquiry in a qualified immunity analysis is whether a constitutional violation occurred at all. *Centanni v. Eight Unknown Officers,* 15 F.3d 587, 589 (6th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994); *Silver v. Franklin Township,* 966 F.2d 1031, 1035 (6th Cir.1992). In other words, we first determine whether Purisch has stated a valid claim under section 1983. Only if we find a constitutional violation do we examine whether it involved "clearly established constitutional rights of which a reasonable person would have known." *Christophel,* 61 F.3d at 484.

1

■ We first address the contention that Volpe's and Quattlebaum's handling of the grievance process violated Purisch's Fourteenth Amendment right to procedural due process. Purisch is essentially arguing that he had a property right to a fair tenure consideration procedure and that the grievance proceedings failed to comport with the due process standards necessary to safeguard this right. Viewing the evidence in the light most favorable to Purisch, we find no violation of a constitutionally protected property interest.

■ We acknowledge at the outset that a Tennessee Tech professor who is eligible for tenure consideration has some minimal property interest in a fair tenure review process. The university's policies include provisions such as, "A tenure-track faculty member *must* be considered for a tenure recommendation by the President during the fifth year of his or her probationary period," and, "Recommendation *shall* be based upon the faculty member's performance of his or her professional responsibilities," *see* Pl's Mem. Opp'n Mot. Summ. J. Ex. 9 at 6, 9 (emphases added). Tennessee Tech has clearly promulgated rules and fostered mutual understandings regarding entitlement to a merit-based tenure review. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972). Consequently, the university may not deny a candidate tenure without some degree of impartial inquiry into his or her qualifications. *See State ex rel. McLendon v. Morton,* 162 W.Va. 431, 249 S.E.2d 919, 925–27 (1978) (holding that professor had right to minimal due process in tenure review).

■ Purisch alleges a number of ways in which Volpe and Quattlebaum failed to follow Tennessee Tech's established guidelines in overseeing his grievance. Violation of a state's formal procedure, however, does not in and of itself implicate constitutional due process concerns. *See Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir.) ("A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."), *cert. denied,* — U.S. —, 113 S.Ct. 3001, 125 L.Ed.2d 694 (1993). In other words, the issue before us is not whether Volpe and Quattlebaum conformed to Tennessee Tech's official grievance procedure in reviewing the tenure decision. Rather, the issue is whether Purisch was afforded the process due to protect his property right to a fair tenure review process.

■ The "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). "The formality and procedural requisites for the hearing can vary, depending upon the impor-

tance of the interests involved and the nature of the subsequent proceedings." *Id.* at 378, 91 S.Ct. at 786. "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)).

The Fourteenth Amendment does not require more procedural protection than Quattlebaum and Volpe afforded Purisch. The grievance proceedings were not the equivalent of a full-fledged judicial inquiry, but they did involve two days of examination of evidence by five committee members plus Quattlebaum. The committee heard testimony from all six witnesses that Purisch requested, in addition to seven others whom the committee called on its own initiative. Purisch himself presented his grievance both orally and in writing. Although Purisch disputes the overall conclusion that the committee reached, the evidence in the record indicates that conclusion was the result of an impartial and thorough inquiry that easily satisfied the requirements of due process. Because we find no constitutional violation, we need explore the issue of qualified immunity no further.

2

Purisch's section 1983 claim against Quattlebaum also includes an allegation that she violated his Fourteenth Amendment right to equal protection. The basis for this claim seems to be that Tennessee Tech's grievance procedure allows cross-examination of witnesses only when sexual harassment is at issue. In other words, Purisch asserts that this distinction between individuals grieving a sexual harassment claim and individuals grieving other concerns denies the latter grievants equal protection of the law.

" 'To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.' " *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332, 341 (6th Cir.1990) (quoting *Johnson v. Morel,* 876 F.2d 477, 479 (5th Cir.1989) (en banc)). None of the classifications that merit heightened equal protection scrutiny is involved in this case. Rather, the "protected class" of which Purisch is a member consists of those Tennessee Tech personnel who grieve matters not involving sexual harassment. Such a class merits constitutional protection only insofar as the state actor could have had no conceivable rational basis for distinguishing it. *See United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461–62, 66 L.Ed.2d 368 (1980); *Muller v. Lujan,* 928 F.2d 207, 210 (6th Cir.1991).

We hold that the Tennessee Tech policy in question is rationally related to a legitimate government interest. Proceedings addressing sexual harassment are usually divisive, sensitive inquiries involving factual determinations dependent on the kind of state-of-mind evidence that cross-examination is particularly adept at eliciting. Although Purisch argues that his grievance likewise would have profited from the use of cross-examination, rational basis review does not demand exacting discernment on the part of the state. The application of this procedural rule therefore did not violate the Constitution's equal protection guarantees. Summary judgment on all the section 1983 claims was proper.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.