**Ojelanki NGWENYAMA, Plaintiff,**

v.

**BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN, a constitutionally created body politic, and Joseph White, and Michael Gordon, individuals, Defendants.**

**No. Civ.A. 97–40351.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 9, 1998.

---

Thomas L. Kent, Green & Green, Ann Arbor, MI, for Jelanki Ngwenyama, plaintiff.

Richard J. Seryak, Joseph G. Sullivan, Blanche B. Cook, Miller, Canfield, Detroit, MI, for University of Michigan Regents, defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Presently before the Court is defendants Board of Regents of the University of Michigan, Joseph White, and Michael Gordon's motion for summary judgment filed on September 25, 1998.[1] As discussed below, the only claim remaining in plaintiff Ojelanki Ngwenyama's complaint is Count II, alleging that defendants White and Gordon violated his due process rights guaranteed under the Fourteenth Amendment, and as secured by 42 U.S.C. § 1983. Specifically, plaintiff alleges that defendants failed to conduct a careful review of plaintiff's application for tenure and perpetrated other acts which ultimately resulted in the denial of his tenure application by the University of Michigan Business School Executive Committee. On October 19, 1998, plaintiff responded to the instant motion. On October 26, 1998, defendants filed a reply brief in support of their motion for summary judgment. A hearing

---

1. Defendant B. Joseph White is the Dean of the University of Michigan Business School. Defendant Michael Gordon is the Chair of the Department of Computer and Information Systems (CIS) within the University of Michigan Business School.

on the instant motion was held on November 18, 1998.

For the reasons set forth below, this Court will grant defendants' motion for summary judgment.

## I. PROCEDURAL HISTORY

On July 15, 1997, plaintiff initiated the above-entitled action with the filing of his complaint in Washtenaw County Circuit Court. He alleged a federal law violation of his civil rights pursuant to 42 U.S.C. § 1983 and a state law claim of racial discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* On August 14, 1997, the case was removed by defendants to this Court. In an Order of Partial Remand issued on November 26, 1997, this Court, in the exercise of its discretion under the doctrine of supplemental jurisdiction, remanded the state law claim to state court. Consequently, the only claim still remaining before this Court is Count II, alleging that defendants violated plaintiff's right to due process of law pursuant to 42 U.S.C. § 1983.

## II. FACTUAL BACKGROUND

In 1990, plaintiff Ojelanki Ngwenyama, a Black male, was hired by the University of Michigan to teach as an Assistant Professor in the School of Business. Initially, plaintiff was employed under a two-year teaching appointment. This appointment was followed by two successive three-year contracts. Ngwenyama taught in the area of computer information systems and computer science, and his area of specialization was critical social theory in the field of information systems.

According to the Bylaws of the University of Michigan's Board of Regents ("Bylaws"), all promotions to tenured teaching positions must be made by the Board of Regents after a recommendation is forwarded by the chair of the department, the dean, and the executive committee of the particular school. *See* Exhibit E to Defendants' Motion, Bylaws § 5.08, "Appointment, Tenure, Promotion, and Resignation of the Staff" (Revised April 1991). The University's Standard Practice Guide presents guidelines related to tenure review and reappointment review. *See* Exhibit F to Defendants' Motion. The Guide states that "[e]ach unit is strongly encouraged to develop and make known procedures that are consistent with the guidelines presented below." *Id.* The Guide further provides that "[w]hen there is tenure review, it should be initiated not later than the end of the first semester of the faculty member's seventh year of University appointments." *Id.* "The tenure review must include a careful examination of the candidate's credentials and performance, and should be conducted by a committee of the faculty. The review should incorporate both internal and external evaluations." *Id.* Furthermore, the Faculty Handbook for Instructional and Primary Staff ("Handbook") sets forth the following criteria for granting tenure:

> Tenure is awarded to those who demonstrate excellent teaching, outstanding research and scholarship, and substantial additional service, each of which must be relevant to the goals and needs of the University, college and department. The award is based upon the achievement of distinction in an area of learning and the prediction of continued eminence throughout the individual's professional career. The Regents will not confer tenure unless the instructional staff member achieves or gives strong promise of achieving promotion in rank within the University.

Exhibit F to Defendant's Motion, Handbook, p. 18.

In a memorandum dated August 26, 1996, plaintiff was provided with general information regarding the upcoming tenure review process by Edward Snyder, Associate Dean for Academic Affairs. *See* Exhibit 6 to Plaintiff's Response. Shortly thereafter, Ngwenyama began gathering documents in support of his upcoming tenure review process. These documents were forwarded to Defendant Gordon, the Computer and Information Sciences (CIS) Area Committee Chairperson. Defendant Gordon allegedly told plaintiff that per instructions from defendant White, Gordon was to prepare plaintiff's review file. After plaintiff Ngwenyama provided defendant Gordon with various documents for his tenure review file, plaintiff asked to see the

dossier when it was completed. Plaintiff alleges that Gordon denied this request on two separate occasions.

Plaintiff alleges that he periodically provided defendant Gordon with material to be added to his dossier, such as letters updating the status of articles previously submitted for publication. Specifically, plaintiff maintains that he gave defendant Gordon an acceptance letter relating to an article he had written, entitled "Communication Richness in Electronic Mail," as well as an email message concerning another article entitled "Groupware Environments as Action Constitutive Resources," indicating acceptance of that article. Plaintiff further alleges that he wrote a letter on December 7, 1996 to defendant Gordon. In that letter, Ngwenyama complained about defendant Gordon's "interrogation" of his students and about the alleged bias of some students against African professors. Plaintiff maintains that this letter and other documents were never added to plaintiff's file and thus were never considered by the Area Committee.

In September 1996, the CIS Area Committee met to discuss plaintiff's tenure case. Summarizing the conclusions reached at that meeting is a memorandum dated September 30, 1996. *See* Exhibit 8 to Plaintiff's Response. The memorandum states that "overall we judge him very good in teaching and potentially [e]xcellent in research." *Id.* Nevertheless, the memorandum further stated that "[t]o date [Ngwenyama] has not been an effective core course teacher for either MBAs or BBAs." *Id.* At the same time, the Committee noted the professor's "strong technical background" and his "heroic efforts" to install and teach the latest software developments. *Id.* The Committee concluded that "[w]e think his contribution to Critical Social Theory may be Excellent, and we would like to get outside letters to help us judge this. At that point, we can better assess his fit to the Michigan Business School's mission and more confidently recommend an action concerning promotion and tenure." *Id.*

On November 12, 1996, plaintiff was summoned to defendant White's office. According to plaintiff, this was before the CIS Area Committee had made its tenure decision and before the outside letters were solicited. At that meeting, plaintiff alleges that defendant White asked him to withdraw his tenure application. In White's deposition, however, the defendant denies that he ever made this request. Plaintiff has submitted deposition testimony of two other professors stating that they recall having been told by Ngwenyama about White's request. *See* Plaintiff's Response, p. 8. Whether or not plaintiff was asked to withdraw his tenure application appears to be a matter in dispute between the parties.

The CIS Area Committee submitted its final written recommendation to the University of Michigan Business School (UMBS) Executive Committee in a memorandum dated January 24, 1997. *See* Exhibit 10 to Plaintiff's Response. By a 3 to 2 vote, the Area Committee forwarded a recommendation that plaintiff be denied tenure and promotion. Plaintiff maintains that the January 24, 1997 memorandum was inexplicably much less positive and different in tone than the earlier September 30, 1996 memorandum mentioned above. Plaintiff further points out that the outside letters solicited by Ngwenyama were overwhelmingly positive with the exception of one letter by one Steven Kimbrough, whom defendants ordered plaintiff to place on the list of reviewers despite Kimbrough's lack of specialization in Ngwenyama's field of study. *See* Plaintiff's Response, p. 10.

On February 21, 1997, defendant White orally communicated to plaintiff that he would not be recommended for tenure. In a letter dated March 25, 1997, White briefly addressed Ngwenyama's concerns about the possible bias in the tenure review process. *See* Exhibit 12 to Plaintiff's Response. Also dated March 25, 1997 is a memorandum from White to Ngwenyama seeking clarification of plaintiff's use of the word "forthcoming" to describe the status of the articles listed in his application for tenure. After being denied tenure and promotion at UMBS, plaintiff was hired by Virginia Commonwealth University, receiving tenure after approximately one year at the institution.

## IV. ANALYSIS

### A. LEGAL STANDARD FOR EVALU-ATING A MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, deposi-tions, answers to interrogatories, and admis-sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluation a motion for summary judgment, the court must view the evidence in a light most favor-able to the nonmovant, as well as draw all reasonable inferences in the nonmovant's fa-vor. *See U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demon-strating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing ... that there is an absence of evidence to sup-port the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the mov-ing party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.Proc. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,*

> [t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmov-ant's own pleadings and affidavits. *Id.*

### B. SUMMARY JUDGMENT IS NOT WARRANTED BY THE ALLEGED FAILURE OF PLAINTIFF'S COM-PLAINT TO SPECIFY WHETHER HE IS SUING DEFENDANTS WHITE AND GORDON IN THEIR OFFICIAL CAPACITIES OR IN THEIR INDIVIDUAL CAPACITIES

■ Defendants first argue that plaintiff's § 1983 claim, alleging that the individual de-fendants violated his due process rights, is barred by the Eleventh Amendment. Since plaintiff's complaint lists defendants Joseph White and Michael Gordon by name and position within the University, defendants maintain that the complaint clearly suggests that White and Gordon are being sued in their official capacities. The University itself is not named as a defendant in the § 1983 claim. Therefore, according to defendants, except for plaintiff's Elliott–Larsen Act state claim, plaintiff has failed to notify White and Gordon that they could be personally liable for the federal claim.

Defendants cite *Wells v. Brown,* 891 F.2d 591 (6th Cir.1989), for the proposition that to establish federal jurisdiction in a § 1983 ac-tion, the plaintiff is required to make clear in the complaint whether he seeks to recover damages from individual defendants directly *or* to hold the state responsible for the con-duct of its employees. The Court finds that plaintiff's complaint has sufficiently made clear that plaintiff sought to recover damages from the individual defendants directly. Plaintiff has listed defendants White and

Gordon as "individuals" in the caption to the complaint filed in state court. This Court therefore concludes that defendants were sufficiently put on notice of the possibility of personal liability.

## C. THE QUALIFIED IMMUNITY DOCTRINE

Defendants further maintain that even if the instant action may be brought against defendants White and Gordon in their individual capacities, plaintiff's claim is nevertheless barred because defendants are entitled to qualified immunity. The standard for establishing a qualified immunity defense is well-settled in the Sixth Circuit. *See Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995); *Purisch v. Tennessee Technological University,* 76 F.3d 1414, 1423 (6th Cir. 1996); *Centanni v. Eight Unknown Officers,* 15 F.3d 587, 589 (6th Cir.), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). "A government official who performs discretionary functions is entitled to qualified immunity from civil suits for damages arising out of the performance of his official duties *unless* his alleged conduct violated clearly established constitutional rights of which a reasonable person would have known." *Christophel,* 61 F.3d at 484 (citing *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994)) (emphasis added). The court of appeals further stated that "[t]he doctrine recognizes that government officials need to perform their duties without fear of litigation, and to be able to reasonably anticipate if their actions will give rise to liability for damages." *Id.* Thus, the doctrine of immunity protects " 'all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

■ The applicability of the qualified immunity defense is a "purely legal question" to be determined by the trial judge. *See Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988). This Court must make a threshold inquiry into whether any due process violation occurred as a result of defendants' review of plaintiff's application for tenure. When a defendant asserts qualified immunity on summary judgment, the court "should not

assume that a given set of facts would make out a constitutional violation and decide the case based on whether those facts are sufficiently pled or proved.... Rather, a court faced with a qualified immunity question should decide squarely whether a constitutional claim is presented." *Christophel,* 61 F.3d at 484–85. When a defendant moves for summary judgment and claims qualified immunity, the burden is on plaintiff in a § 1983 action to allege and prove that defendant officials violated a "clearly established statutory or constitutional right." *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994) (citing *Tucker v. Callahan,* 867 F.2d 909, 913–14 n. 3 (6th Cir.1989)).

### 1. WHETHER A CONSTITUTIONAL VIOLATION OCCURRED BY DEFENDANTS' DENIAL OF PLAINTIFF'S TENURE

■ The first step in a qualified immunity analysis is whether the allegations in plaintiff's complaint "state a claim of the violation of a clearly established law." *Adams,* 31 F.3d at 386; *see also White v. Tamlyn,* 961 F.Supp. 1047, 1061–62 (E.D.Mich.1997) (Gadola, J.). Second, "plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed the acts that violated the law." *Id.* "Both are questions of law for the Court to decide." *Id.* Accordingly, the Court will first examine the threshold issue of whether plaintiff has stated a claim for the violation of his due process rights.

In *Purisch v. Tennessee Technological University,* 76 F.3d 1414 (6th Cir.1996), a case similar to the present one, the Sixth Circuit considered whether a professor of mathematics had stated a claim under § 1983 for defendant's alleged violation of plaintiff's due process rights in denying him tenure. *Id.* at 1423. The Sixth Circuit acknowledged at the outset that a university professor "who is eligible for tenure consideration has some minimal property interest in a fair tenure review process." *Id.* However, the court also recognized that "[v]iolation of a state's formal procedure ... does not in and of itself implicate constitutional due process concerns." *Id.* (citing *Levine v. Torvik,* 986 F.2d 1506,

1515 (6th Cir.), *cert. denied*, 509 U.S. 907, 113 S.Ct. 3001, 125 L.Ed.2d 694 (1993) (holding that "[a] state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable")).

In keeping with the Sixth Circuit's pronouncement in *Purisch,* it is clear that plaintiff Ngwenyama did indeed have some "minimal property interest" in the University of Michigan's administration of a fair tenure review process.[2] As the *Purisch* court recognized, "[t]he 'root requirement' of due process is 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" *Id.* at 1423 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). "'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.'" *Id.* at 1423–24 (quoting *Bod-*

*die v. Connecticut,* 401 U.S. at 378, 91 S.Ct. 780). "'In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action.'" *Id.* at 1424 (quoting *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985)) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)).[3]

Since, under *Purisch,* it is clear plaintiff did have a constitutional due process right to a fair tenure review process, the next step in the inquiry is whether plaintiff has presented sufficient evidence to create a genuine issue as to whether defendants in fact committed acts that violated the law. Put another way, the issue is whether plaintiff was afforded the process to which he was due under the Fourteenth Amendment. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).[4] The Supreme Court has announced that "[a]n essential principle of due process is that a

---

**2.** Defendants argue that plaintiff had no such property interest in a fair tenure review process, citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993) and *Ryan v. Aurora City Board of Education,* 540 F.2d 222, 227 (6th Cir.1976). Defendants read these decisions too broadly. *Levine* and *Ryan* stand for the proposition that not all violations by a state of its own procedures will result in a federal constitutional violation. However, in the instant case, plaintiff does not base his due process claim solely on the contention that defendants failed to follow the University guidelines. Plaintiff additionally argues that particular conduct allegedly perpetrated by defendants resulted in a due process violation. While plaintiff may not have had an enforceable constitutional right to the implementation of the internal guidelines, recommendations or procedures of the University, he did have a constitutional right to a fair tenure review process. *See Purisch,* 76 F.3d at 1423 (stating that "[w]e acknowledge at the outset that a Tennessee Tech professor who is eligible for tenure consideration has some minimal property interest in a fair tenure review process").

**3.** In contrast to the situation presented in *Purisch,* plaintiff in the case at hand failed to file a grievance subsequent to his being denied tenure. In *Purisch,* the court found that the Fourteenth Amendment did not require *more* procedural protection than had been afforded the professor in that case. *See Purisch,* 76 F.3d at 1424. The grievance committee in *Purisch* heard testimony from six witnesses that plaintiff had requested, as well as seven others whom the committee called

on their own initiative. *Id.* Plaintiff Purisch himself presented his grievance to the committee, both orally and in writing. Although, as previously mentioned, Professor Ngwenyama neglected to file a grievance after being informed by defendant white that he had been denied tenure, this Court finds that plaintiff still had a protected property interest in a fair tenure review process.

**4.** The Supreme Court held in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) that

the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures. The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology. "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards" .... In short, once it is determined that the Due Process Clause applies, "the question remains what process is due." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

*Cleveland Bd. of Educ.,* 470 U.S. at 541, 105 S.Ct. 1487.

deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' " *Id.* at 542, 105 S.Ct. 1487 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)).

■ In the instant case, the Court finds that plaintiff did receive appropriate notice and an *opportunity for hearing,* the process due to him under the Constitution. Although plaintiff makes a variety of allegations regarding the propriety of his tenure review, none of the evidence presented, even if construed in the light most favorable to plaintiff, establishes that a due process violation occurred. The CIS Area Committee met in the Fall of 1996 and early 1997 to review and discuss plaintiff's candidacy for tenure. In 1997, the Executive Committee met and reviewed plaintiff's tenure packet and outside review letters. *Most significantly,* plaintiff was provided an opportunity to file a grievance contesting the Executive Committee's denial of tenure, but neglected to do so.

Plaintiff Ngwenyama attempts to call into question the fairness of his tenure review process by asserting certain acts of defendants which allegedly violated his due process rights. Specifically, plaintiff argues that (1) defendants attempted to negatively influence student evaluations of plaintiff, (2) suggested to plaintiff before any formal review that plaintiff withdraw his application for tenure and promotion, (3) solicited opinions of outside reviewers who were unfamiliar with plaintiff's area of expertise, and (4) failed to include information favorable to plaintiff in his tenure review dossier. The Court must determine whether plaintiff has shown by these factual predicates that he was denied his constitutional right to due process of law in violation of the Fourteenth Amendment, and as secured to him by federal statute, 42 U.S.C. § 1983.

With respect to the matters of fact apparently in dispute between the parties, none of these disputes are germane to the constitutional issue. Even if the Court resolves all disputes in plaintiff's favor, this still does not establish that a constitutional violation has occurred. For example, plaintiff maintains that defendant White asked or suggested that plaintiff withdraw from tenure consideration. This suggestion allegedly occurred during a discussion in White's office in November 1996. Assuming *arguendo* that defendant White did make such a suggestion, this does not amount to a due process violation. The Faculty Development Policy of the Business school explicitly provides that "[t]he candidate may terminate the tenure process by stating that he or she does not want an outside review, in which case a terminal appointment would follow." *See* Exhibit G to Defendant's Motion. Plaintiff has not identified any improper influence exerted on any committee members by defendants, either before or after defendant White met with plaintiff. Whether or not defendant White suggested that plaintiff withdraw his application is immaterial because plaintiff in fact opted for external review and had the same option as other candidates who decided to go forward with their tenure applications.

With respect to plaintiff's assertion that some documents provided to defendant Gordon were not included in his dossier, this assertion, again even if taken as true, does not rise to the level of a constitutional violation. There are no provisions of the Faculty Handbook, Standard Practice Guide or policies of the Business School which would obligate defendants to include in plaintiff's tenure packet the December 7, 1996 letter addressed to defendant Gordon. In addition, defendants were not required to show plaintiff his external review letters, or his completed dossier.

Lastly, plaintiff's allegation that defendant Gordon "interrogated" students who had attended various classes taught by plaintiff does not support the claim that plaintiff's due process rights were violated. *See* Exhibit O to Defendant's Motion. Even if defendant Gordon did interview students and question them about plaintiff's teaching, this appears to be an entirely permissible activity under the rules and regulations promulgated by the University. Moreover, plaintiff has not presented any affidavit testimony or any other evidence which would tend to show that these interrogations biased the students against the professor's teaching abilities.

Accordingly, this Court finds that plaintiff has failed to satisfy the second hurdle a plaintiff must effectively pass when a motion for summary judgment is brought by defendant on the ground of qualified immunity. Defendants' conduct did *not* result in a violation of plaintiff's clearly established constitutional right to due process of law.

## 2. SINCE THERE WAS NO DUE PROCESS VIOLATION, DEFENDANTS, AS GOVERNMENT OFFICIALS PERFORMING DISCRETIONARY FUNCTIONS, ARE ENTITLED TO QUALIFIED IMMUNITY

Having concluded that defendants' conduct in denying plaintiff tenure did not result in a due process violation, it is apparent that as government officials performing the discretionary function of tenure review, defendants are entitled to qualified immunity from damages in the instant civil suit. Construing all the evidence in a light most favorable to plaintiff, the Court does not find that plaintiff has alleged sufficient facts to indicate that defendants' conduct was objectively unreasonable in light of the clearly established right to due process under the Fourteenth Amendment.

It is important to note that plaintiff was provided an opportunity to file a grievance complaining of unfair treatment, but neglected to do so. Plaintiff's failure to file a grievance in order to contest the UMBS Executive Committee's decision denying him tenure forecloses any discussion of the adequacy of such a hearing. Had such a grievance hearing been requested by plaintiff and subsequently conducted, the Court would then have been in the position to inquire as to whether such a hearing had served to protect plaintiff's due process rights guaranteed by the Fourteenth Amendment.

In summary, plaintiff did have, under *Purisch*, a "minimal property interest" in the University of Michigan's administration of a fair tenure review process. Nevertheless, defendants' alleged conduct did not rise to the level of violating plaintiff's due process rights.[5] This is especially true given the fact that plaintiff's tenure application was reviewed by two separate committees: the first issuing a detailed report weighing the pros and cons of plaintiff's tenure application, and the second voting 3 to 2 for denial. Such a two-tiered approach, coupled with the existence of the university's internal grievance procedure, more than satisfies the requirements of due process.

For the reasons set forth above, the Court will grant defendants' motion for summary judgment.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendants Board of Regents of the University of Michigan, Joseph White, and Michael Gordon's motion for summary judgment is **GRANTED.**

**SO ORDERED.**

### JUDGMENT

The Court, having granted defendants Board of Regents of the University of Michigan, Joseph White, and Michael Gordon's motion for summary judgment, after a hearing held on November 18, 1998 before the Honorable Paul V. Gadola, District Judge, presiding,

It is hereby **ORDERED** and **ADJUDGED** that the above-entitled action is dismissed on the merits.

---

5. No part of the Court's opinion is to be construed as disposing of Count I of plaintiff's complaint, alleging racial discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* *See* Plaintiff's Complaint, Count I. As discussed above, this claim has been remanded to the Washtenaw County Circuit Court, and will be adjudicated in that forum.