UNITED STATES of America,
Plaintiff–Respondent,

v.

Richard DABELKO, Defendant–Petitioner.

No. 4:97CV1076.
No. 4:89CR171.

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 18, 2000.

Ronald B. Bakeman, Office Of The U.S. Attorney, Cleveland, OH, for Respondent.

Cheryl J. Sturm, Chadds Ford, PA, Petitioner.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. Introduction.

Presently before the Court is the petition of Richard Dabelko ("petitioner") for relief under the provisions of 28 U.S.C. § 2255. Petitioner's basic claim is that he was denied the effective assistance of his lawyer, Jerry Milano, who represented him at trial in 1990 and failed to communicate accurately the status of guilty plea negotiations that preceded the trial, presided over by Judge George White, as a result of which he was convicted and sentenced to 292 months. The petitioner's conviction and sentence were affirmed by the Sixth Circuit on January 9, 1992 in its Case Nos. 90–3926, 3969 and 4126.

The petitioner's action pursuant to 28 U.S.C. § 2255 was filed in 1997 and dismissed by Judge George White without requesting a response from the government. The petitioner filed an appeal to the denial, and the Sixth Circuit remanded the case to the district court for an evidentiary hearing. As Judge White had retired, the case was reassigned to this branch of the Court. The Court conducted an evidentiary hearing on August 22, 2000 in which the petitioner, Ron Bakeman, the assigned AUSA for the 1990 trial, Attorney Phillip Korey and petitioner's former secretary, Susan Jeffers, testified. Dabelko's trial attorney did not testify as it was stipulated that he has no memory of the proceedings, and the Court understands that Mr. Jerry Milano suffers from Alzheimers Disease. The Court ordered a transcript of the evidentiary hearing and directed post hearing briefs and reply briefs which have been filed. The case is now at issue.

The Court conducted the evidentiary hearing mindful of the Sixth Circuit's opinion in the § 2255 case in which it stated in part as follows:

> To establish his ineffective assistance of counsel claim, petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,*

466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Next he must "establish that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the ... offer and pled guilty." *Turner v. State,* 858 F.2d 1201, 1206 (6th Cir.1988), *vacated on other grounds,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 559 (1989); *see Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Plaintiff must show this by objective evidence. *See Turner,* 858 F.2d at 1206; *Hill,* 474 U.S. at 59–60, 106 S.Ct. 366. Then, the government may show by "clear and convincing evidence that the trial court would not have approved the plea arrangement." *Turner,* 858 F.2d at 1209. If petitioner were to establish the bases for showing ineffective assistance of counsel, the remedy for such violation would then have to be considered, including whether a new trial should be ordered. *See id.* at 1207–09. Under the unique facts of that case if relief were to be ordered, a hearing might be required "at which the [government] is required to show why its former offer ... should not be reinstated." *Id.* at 1209 (Ryan J., concurring).

In light of the government's argument in the instant appeal, contrary to the facts in *Turner,* it is not a given that the United States may actually have made a specific offer which DaBelko was prepared to accept regardless of his counsel's advice, or lack thereof. The burden is upon DaBelko to show that the prosecution made him a specific plea bargain that he was ready to accept had he received effective assistance of counsel.

\*     \*     \*     \*     \*     \*

The issue is a close one, but we have found error in the district court's important findings that the government was not interested in a plea bargain, and that none was made or offered. Peti-tioner has indicated enough in his motion that his counsel may not have made an adequate examination of the facts and circumstances about guilt and sentence enhancement. His counsel may not have made an adequate, minimal examination of the applicable guidelines law so as to advise DaBelko about his serious exposure in light of circumstances involving a prior drug conviction, extent of the conspiracy and quantity of drugs, and possession of a firearm in connection with drug activities.

DaBelko received a draconian sentence in this case, approved by this court in the direct appeal. Without deciding at this juncture the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), issues, we believe in our oversight capacity it is appropriate to order a hearing in the district court to reconsider the issues raised and to determine whether DaBelko has carried his burden to demonstrate ineffective assistance of counsel, as claimed.

*Richard Dabelko v. United States,* 211 F.3d 1268, slip op. at 3–4, 7 (6th Cir. May 3, 2000).

## II.  Fact Findings.

The Court makes the following fact findings to aid in its analysis and for possible appellate review.

1.  The indictment was filed on June 13, 1989 and named nine defendants including the petitioner. A superseding indictment was filed on November 29, 1989. The superseding indictment charged the petitioner with conspiracy to distribute and possessing with intent to distribute cocaine in Count One, the substantive offense of possessing with intent to distribute 1,959 grams of cocaine on May 17, 1989 in Count Seven, and two Counts (19 and 20) for using a communication facility to facilitate acts constituting a felony. The conspiracy

count did not allege an amount of cocaine that would be attributable to any one conspirator.[1] However, it was the position of the government that the amount of cocaine chargeable to the petitioner, for guilty plea discussion purposes, was between 15 and 50 kilograms of cocaine. Pursuant to the provisions of 21 U.S.C. § 841(b)(1)(A)(ii), five or more kilograms of cocaine called for a sentence of not less than 10 years in prison.

2. Eight other defendants, Howard Blum, Francis Dabelko, Alfred Conti, John Burcsak, Phillip Christopher, Stanley Miller, Dominic Palone, Jr., and Charlie Treharn, were named in the indictment and superseding indictment. Blum, Burcsak, Christopher, Miller, Palone and Treharn entered pleas of guilty.

3. On May 24, 1990, six days before the jury trial began on May 30, 1990 for the petitioner, his brother Francis Dabelko and Alfred Conti, the prosecution filed notice of an enhancement under the provisions of 21 U.S.C. § 851 which charged that, if the petitioner was convicted of Count One of the indictment, the United States would rely upon a previous conviction of the petitioner for the purpose of involving the increased sentencing provisions of Title 21, Section 841(b)(1)(A) of the United States Code. The previous conviction for trafficking in drugs was obtained in the Court of Common Pleas, Trumbull County, Ohio on November 2, 1984.

4. The petitioner was convicted of Counts 1, 7, 19 and 20 following the jury trial and sentenced to a term of imprisonment of 292 months based on an offense level of 38 and a Criminal History of III, setting up a range of 292 months to 365 months. The district court determined the base offense level to be 34 based on a

finding that the petitioner was chargeable with 40 kilograms of cocaine, an additional two levels for role in the offense and two additional levels for the weapon. A paragraph in the petitioner's presentence report added two levels for the weapons and stated:

> Richard DaBelko possessed drug paraphernalia at 1916 Sheridan Ave., Warren, Ohio. *Note:* On 11/20/90, the government advised this probation officer that two loaded weapons were found with the drug paraphrenalia [sic] in the defendant's bedroom: a .380 semi-automatic Colt pistol and a .22 Sterling Arms.

5. The other two defendants who stood trial with the petitioner, Francis Dabelko and Alfred Conti, were also charged with a quantity of cocaine of 40 kilograms.

(a) The co-defendant, Francis Dabelko, was charged with a base offense level of 34 based on 40 kilograms of cocaine and given a two-level reduction for a minor role in the offense; with a Criminal History of I, he was at a range of 121 to 151 months and he received a sentence of 121 months.

(b) The co-defendant, Alfred Conti, was charged with 40 kilograms of cocaine, with an offense level of 34, and granted a two-level reduction for a minor role; his Criminal History of II produced a range of 135 to 168 months, and he received a sentence of 135 months.

6. Howard Blum, the cooperating and testifying defendant, was held responsible for 3.5 to 5 kilograms of cocaine for an offense level of 30; four additional levels were added for role in the offense, less two levels for acceptance of responsibility, to an adjusted level of 32 less six levels that the sentencing entry says were based on

---

1. Count One in the superseding indictment alleged a series of overt acts describing in paragraphs 3, 12, 43, 45, 46, and 47 varying

amounts of cocaine which collectively exceeded nine kilograms.

the plea agreement but which appear to be for substantial assistance. Blum was then at offense level 26 with a Criminal History of III, which resulted in a range of 78 to 97 months. He received a sentence of 96 months.

7. Phillip Christopher, who pled guilty within a few days of the start of the jury trial for the petitioner, was charged with 5 to 15 kilograms of cocaine for an offense level of 32; with a Criminal History of V, a reduction of four levels for acceptance of responsibility and another two levels for substantial cooperation produced a range of 130 to 162 months. He received a sentence of 144 months to be served concurrently with a sentence in another case.

8. The remaining defendants, Treharn, Palone, Burcsak and Miller, received much smaller sentences ranging from 36 months to a split sentence for Miller.

9. The petitioner, Francis DaBelko and Alfred Conti all appealed their convictions and sentences to the Sixth Circuit which affirmed the convictions and sentences in an unpublished opinion filed on January 9, 1992 in its Case Nos. 90–3926, 3969 and 4126. The per curiam opinion summarized the evidence in the following paragraphs:

> Evidence of defendants' guilt of possession of and conspiracy to distribute cocaine came from searches of their residences as well as court-authorized monitoring of their conversations, extensive law enforcement surveillances, and the testimony of co-conspirator Howard Blum. Executing a search warrant on Richard Dabelko's residence, the police found two scales, both covered with a white powdery substance that later tested positive for cocaine, three weapons, and over $35,000 in cash. The search warrant on Francis Dabelko's home produced 1,900 grams of cocaine and seven brown paper bags with his finger prints, as well as a personal telephone directory containing the telephone number of an identified supplier of cocaine. At Conti's home, the police found 19 grams of cocaine, drug paraphernalia and a scale covered with white powder. The police also confiscated a suitcase containing approximately 810 grams of cocaine from the house of Conti's sister.

> The district court had authorized the interception of phone conversations over the telephones located at Richard Dabelko's residence, Conti's residence, and Howard Blum's jewelry business. It also authorized the installation of a listening device at Blum's business. Twenty conspiratorial conversations involving some or all of the three appellants were played to the jury. Topics of conversation included meetings to pick up money to pay their cocaine supplier, meetings to pick up the cocaine, delivering the cocaine to the "stash" house, discussing debts from the sale of cocaine, and other topics related to conspiracy to distribute cocaine.

> Finally, co-conspirator Howard Blum testified regarding the workings of the conspiracy. Based on Blum's cooperation with federal law enforcement officials, a superseding indictment was filed against Richard DaBelko. The government informed Richard that they intended to request the court to enhance his penalties based upon his prior conviction for drug trafficking, if he was convicted for either conspiracy or possession of cocaine with intent to distribute.

*United States v. Francis Dabelko, et al.,* 952 F.2d 404, slip op. at 2–3 (6th Cir. January 9, 1992).

10. Ron Bakeman was the assigned AUSA for Case No. 4:89CR171. Jerry Milano represented the petitioner in pretrial matters and at the trial which led to the petitioner's conviction. Following his conviction but prior to sentencing, the petitioner changed lawyers and was represent-

ed at the sentencing by Elmer Guiliana and Phillip Korey. Prior to the trial, Bakeman and Milano engaged in guilty plea discussions on several occasions.[2] In the U.S. Attorney's Office to which Bakeman was assigned, the practice as to guilty plea agreements was for the assigned AUSA to present the proposed guilty plea agreement to a supervisor for approval.[3] The guilty plea discussions between Bakeman and Milano did not reach the stage where Bakeman would have presented a proposed guilty plea agreement to his supervisors for the necessary approval.[4]

11. Bakeman considered defendant Howard Blum and the petitioner to be the persons at the top of the pyramid in connection with the nine-defendant conspiracy.[5]

12. Bakeman was unwilling to enter into a final plea agreement with the petitioner's brother and co-defendant, Francis Dabelko, unless the petitioner also agreed to plead guilty because the government's case demonstrated that Francis possessed quantities of cocaine but, in Bakeman's view, was acting for the petitioner in the possession.[6]

13. Bakeman initially offered testimony that the proposed guilty plea discussions with Milano were anchored in an application of the Sentencing Guidelines. They were based on a quantity of cocaine to be charged to the petitioner (50 to 150 kilograms), the petitioner's role in the offense (an increase of two levels), an increase of two levels for a gun, and a two-level reduction for acceptance of responsibility, and did not include the Section 851 enhancement based on the prior record of the petitioner.[7] Subsequently, Bakeman corrected his initial testimony and indicated that the plea discussions were based on 15 to 50 kilograms of cocaine (*See* TR at 37).

14. The drug quantity table in the Sentencing Guidelines Manual effective November 1, 1989 provided for a level 34 for "at least 15 KG but not less than 50 KG of cocaine." The drug quantity for the cocaine being discussed by Bakeman during the plea discussions with Milano was 15 to 50 kilograms of cocaine, with a resulting base offense level of 34. An adjusted offense level of 36 would have resulted from adding two levels for petitioner's role in the offense and two levels for possession of the weapons, less two levels for acceptance of responsibility. Since the petitioner had a Criminal History of III, the sentencing range would have been 235 to 293 months.

15. Milano constantly attempted to bargain for a guilty plea agreement with Bakeman that would result in a specific number of years, but never responded to an analysis of the guideline applications being discussed by Bakeman.[8] The Bakeman–Milano discussions, to the extent the discussions can be described as plea negotiations, never focused on the quantity of the cocaine to be charged to the petitioner or the petitioner's role in the offense or the relevancy of the weapon.

16. There was never a meeting of the minds between Bakeman and Milano as to any guilty plea agreement.

17. The petitioner, free on bond, met with Milano approximately six times before the trial. Milano did not discuss the applicability of the Sentencing Guidelines

---

2. *See* Evidentiary Hearing Transcript (hereafter "TR") at 6–10.

3. *See* TR at 48.

4. *See* TR at 38–39.

5. *See* TR at 12, 29–30, and 41.

6. *See* TR at 20–21.

7. *See* TR at 28, 37.

8. *See* the testimony of AUSA Bakeman beginning at TR page 37, line 22 to page 41, line 25.

with the petitioner in any of the meetings.[9] Milano did not tell the petitioner that he was facing a mandatory minimum of 20 years if convicted.[10] Milano did not inform the petitioner as to the consequences of the Section 851 enhancement.[11]

18. At the evidentiary hearing, the petitioner testified that Milano told him, apparently prior to trial, that Bakeman had made an offer of 121 to 154 months and the petitioner then told Milano to see if the government would go for eight years.[12]

19. At the evidentiary hearing, the petitioner testified that he asked Milano if he should accept or reject the offer Milano described as offered by Bakeman; he related that Milano told him that "I would be crazy to accept the offer." [13] The petitioner also testified that Milano told him that the government "had a weak case against him."

20. The first time the petitioner grasped the fact that he was facing a sentence of 20 years or more was after the jury found him guilty and his bond was revoked.[14]

21. Petitioner's trial counsel, Jerry Milano, did not understand the operation of the Sentencing Guidelines in a complex cocaine conspiracy case involving multiple defendants and the ensuing issues dealing with quantity of the cocaine attributable to a particular participant convicted of the conspiracy, or the impact of a role in the offense determination, or the impact of a finding that weapons were associated with the petitioner's participation in the conspiracy.[15]

22. When Bakeman was engaged in guilty plea discussions with Milano, he was of the opinion that he had a very strong case against the petitioner.[16]

23. If the plea discussions between Milano and Bakeman had developed to the stage where the proposal of Bakeman, anchored in the Sentencing Guidelines, had been reduced to writing and approved by Bakeman's supervisors and then presented to the petitioner, the petitioner, encouraged by Milano's opinion about the weakness of the government's case, would have rejected such a written plea agreement.

**III. The Conclusion Based on the Findings of Fact and the Application of the Teachings of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Turner v. State,* 858 F.2d 1201 (6th Cir. 1988).**

■ To establish his ineffective assistance of counsel claim, the petitioner's first burden was to establish that Milano's representation with respect to communicating accurately the text of the guilty plea discussions Milano had with Bakeman fell below an objective standard of reasonableness. Even though the Sentencing Guidelines, first effective on November 1, 1987, were in their infancy in 1990, the Supreme Court had decided that the Sentencing Guidelines passed constitutional muster.[17]

Lawyers undertaking to represent a defendant charged in criminal court had a responsibility, even as early as 1990, to become informed and knowledgeable with respect to the operation of the Sentencing

9. *See* TR at 67–68.

10. *See* TR at 68.

11. *See* TR at 69.

12. *See* TR at 70.

13. *See* TR at 71.

14. *See* TR at 72.

15. *See* TR at 43.

16. *See* TR at 42.

17. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

Guidelines. Milano, although an excellent courtroom trial lawyer,[18] failed in this responsibility. Although Milano did inform the petitioner of the possibility that the prosecution would enter into a guilty plea agreement, he misrepresented the discussions by substantially minimizing the substance of the guilty pleas discussions. *Turner v. State, supra,* teaches that a petitioner such as Dabelko, must "establish that there is a reasonable probability that, but for the incompetence of counsel, he would have accepted the . . . offer and pled guilty." As stated in the Sixth Circuit's opinion remanding this case for an evidentiary hearing: "[T]he burden is upon Dabelko to show that the prosecution made him a specific plea bargain that he was ready to accept had he received effective assistance of counsel." *Richard Dabelko v. United States, supra,* slip op. at 4.

In the petitioner's brief, filed after the evidentiary hearing and in support of relief, alternative arguments are advanced. First, the petitioner appears to argue that, had Milano accurately advised the petitioner about the strength of the government's case, the petitioner would not have rejected the ten-year offer. That argument is predicated on a fact proposition that this Court has rejected. The Court has found no credible evidence that AUSA Bakeman proposed a guilty plea agreement that would have called for a ten-year sentence.

■ Alternatively, the petitioner argues that Milano was ineffective in failing to perceive the strength of the government's case and in failing to negotiate with AUSA Bakeman on the quantity of drugs to be assigned to the petitioner, as well as other issues, in the calculation of the adjusted base offense level. The petitioner argues that, had such a process been employed by Milano and competent advice provided, he would have entered into a guilty plea agreement that would have resulted in a sentence significantly below 20 years, rather than the 292 months he received as a consequence of Milano's ineffective assistance in failing to assess properly the government's case and in failing to negotiate for a guilty plea agreement that would have reduced the adjusted base offense level.

That alternative proposition has not been recognized as a basis for relief. Translated: the petitioner, who puts the government to the test of proving its case based on the defendant's not guilty plea, contends that he is entitled to a reduced sentence by establishing that his retained counsel mistakenly analyzed the strength of the government's case and then refused to negotiate with the government on a guilty plea agreement that the petitioner now claims he would have accepted even though in excess of the allegedly rejected offer he was mistakenly advised the government had suggested.

The record before the Court strongly suggests that the petitioner would not have accepted a guilty plea agreement if the alternative scenario he now suggests had taken place. The testimony of AUSA Bakeman indicates that Francis Dabelko, the petitioner's brother, would have successfully negotiated through his counsel a guilty plea agreement that would have resulted in a much lower sentence than the 121 months he received after standing tri-

---

**18.** As of 1990, Jerry Milano was an experienced criminal trial lawyer. In this Court's view, Milano enjoyed a reputation as an excellent trial lawyer. One of his well-known trial victories is briefly described in *Levine v. Torvik,* 986 F.2d 1506, 1509–10 (6th Cir. 1993). In the *Levine* case, as counsel for the defendant Levine in a state criminal case, Milano achieved a not guilty by reason of insanity verdict in Cuyahoga County Common Pleas Court in a highly publicized case in which Levine kidnapped, shot and killed Julius Kravitz, a prominent Cleveland citizen, and seriously injured Kravitz's wife.

al, except for the fact that Bakeman was unwilling to agree to such a sentence absent Francis Dabelko's cooperation or the willingness of the petitioner to plead guilty. The fact that the petitioner was unwilling to plead guilty to what he believed was a ten-year offer supports the conclusion that the petitioner would not have pled guilty under a scenario where his sentence would have been substantially in excess of 10 years, assuming a successful negotiation effort by Milano to reduce the sentence to a figure approaching 15 years.[19]

At the very core of criminal proceedings in federal court are guilty plea discussions. The Sentencing Guidelines have served to increase meaningful plea discussions and, in the vast majority of the cases, those plea discussions result in a guilty plea agreement. The Criminal Rules of Procedure require careful monitoring of the process by the district court in the taking of the guilty plea.[20] However, the Criminal Rules provide in no uncertain terms that the district court is not to participate in guilty plea negotiations.[21] There is no procedure in place to monitor guilty plea discussions (that may or may not result in the preparation of a written plea agreement) which do not result in a guilty plea, but rather a trial. There are no procedures in place to insure that a defendant is given accurate information about the impact of the Guidelines in the event of a conviction, except during the process of taking a guilty plea. Even if there were such a procedure, it would be indeed a hazardous undertaking because some of the sentencing factors, such as quantity of drugs attributable to the defendant, his role in the offense, his acceptance of responsibility, and a possible enhancement for a weapon, would be speculative.

The case at hand highlights the vacuum a defendant such as Dabelko falls into when his counsel, for whatever reason (be it ignorance, reluctance to master the Sentencing Guidelines, or the defendant's protestations of innocence), fails to guide the defendant with accurate information about the perils of trial versus a guilty plea agreement. In this vacuum, the Court has made three critical findings of fact.

First, Bakeman, on behalf of the government, never offered to permit the petitioner to plead guilty under any agreement that would have resulted in a sentence less than approximately 20 years of confinement.

Second, Milano, the petitioner's trial counsel, failed to advise the petitioner accurately as to the consequences of a conviction in terms of the years the petitioner was facing under the impact of the Sentencing Guidelines. That fact finding, as previously indicated, leads to the conclusion that the petitioner was denied the effective assistance of counsel by such a failure.

■ Third, the petitioner was advised by his counsel that the government's case was "weak" and he would be "crazy" to

---

19. Had Milano entered into guilty plea negotiations with Bakeman anchored in the application of the Sentencing Guidelines, it is quite within the realm of probability that the government would have, in consideration of a guilty plea, agreed to eliminate the weapons as an additional two level addition, stayed with the quantity of cocaine at 15 to 50 kilograms and with the two level reduction for acceptance of responsibility. The adjusted offense level would then have been 34 and with a Criminal History of III, the sentencing range would have been 188 to 235 months. Since Judge George White sentenced the petitioner at the low end of the range after he stood trial, it seems likely that he would also have chosen the low end of the range under the scenario outlined.

20. *See* Fed.R.Crim.P. 11(c) and (d).

21. *See* Fed.R.Crim.P. 11(e)(1).

accept the offer of ten years. That advice, which on hindsight appears to have been misguided, does not constitute the ineffective assistance of counsel.

Those three fact findings lead to the dispositive conclusion that, had the petitioner been advised accurately as to the guilty plea representations as advanced by Bakeman, i.e., an application of the Sentencing Guidelines calling for a sentence of approximately 20 years, he would have rejected the Bakeman guilty plea agreement proposal and proceeded to trial.[22]

Consequently, the Court finds that the petitioner has failed to meet the burden imposed by the Sixth Circuit to establish that he would have accepted the proposed plea agreement suggested by Bakeman and rejected by Milano. Therefore, the ineffective assistance of Milano does not justify the remedy of a reduced sentence.

If, in fact, the vacuum that the Court has described requires some remedial action, such remedial action requires appellate direction in the use of its supervisory powers or an appropriate modification of the Criminal Rules of Procedure.

The petitioner's application for a writ is DENIED.

IT IS SO ORDERED.

---

22. The Court is of the view that counsel have since become far more sophisticated in dealing with the representation of defendants in a drug conspiracy case involving multiple defendants, cooperating defendants and evidence developed from court-monitored wiretaps under Title III. In 1989, this branch of the Court presided over such a case in which over 30 defendants were joined in a single indictment. Eleven of the defendants went to trial in a single trial and all were convicted or pled guilty during the trial. The Sixth Circuit, in an unpublished opinion in Case No. 89–4098, affirmed the convictions on October 31, 1991. The sentences of the defendants who went to trial ranged from 300 months to 84 months. This year the Court was assigned a cocaine conspiracy involving approximately 30 defendants and six court-authorized Title III wiretaps and, eventually, cooperating defendants. The Court, mindful of the vacuum described in this opinion and the decision of the Sixth Circuit remanding this case for an evidentiary hearing, conducted the arraignment of all defendants at one sitting and gave a short discussion on the sentencing issues that arise in a cocaine conspiracy case including quantity of the drugs chargeable to a defendant, the role of a convicted defendant in the conspiracy, the credit for acceptance of responsibility. That case, No. 1:00CR257, has been completed by guilty pleas of all defendants except for two who were dismissed by the government. The Court is of the view that, had the petitioner here had the benefit of those years of experience that defense lawyers have developed since the late 80's, the outcome in the petitioner's case would probably have been less "draconian."